# CASES AT LAW AND IN CHANCERY

## DETERMINED IN THE

# SUPREME COURT OF THE STATE OF COLORADO.

## SEPTEMBER TERM, 1890.

### TWIN LAKES H. G. MIN. SYND. (LIM.) v. COLO. MIDLAND R'Y CO.

1. CONDEMNATION OF MINING LAND FOR RAILROAD PURPOSES — INSTRUCTIONS TO JURY.— In proceedings by a railroad company to condemn placer mining land, an instruction that " the fact that the land is designated as 'placers,' and that the title thereto was acquired under the mining laws of the United States, constitute no evidence that the ground in question contains valuable deposits of gold or other mineral, or that the same is valuable for placer purposes," is not objectionable, if in the same instruction the jury are told that, if they believe from the evidence the land contains deposits of gold, they may consider the fact as bearing on the question of its value, and that, if the presence of gold enhances either the market or intrinsic value of the land, due weight must be given to that fact.

2. APPRAISEMENT OF DAMAGES.— Since, under the Code of Civil Procedure of Colorado, section 253, the value of property taken in condemnation proceedings is the actual value thereof at the time of the appraisement, an instruction that the value of the land taken and damages to the residue are to be assessed in accordance with the situation of the property and conditions existing at the date the petition for condemnation is filed, is reversible error.

*Error to District Court of Chaffee County.*

THIS was a proceeding in condemnation, instituted by defendant in error, the Colorado Midland Railway Company,

to acquire the right of way for a railroad across placer mining property of plaintiff in error, the Twin Lakes Hydraulic Gold Mining Syndicate (Limited). It having been deemed important that the railroad company should have immediate possession of the right of way for the purposes of construction without waiting the conclusion of legal proceedings determining the amount of damage, the parties entered into a contract in which, with various other provisions, covenants and stipulations, occurs the following:

"In consideration of the foregoing covenants and agreements, to be kept and performed by the party of the first part, said party of the second part hereby agrees that said first party may enter into the immediate possession of said premises for the purposes aforesaid, and may begin at once in the construction of its railway thereon.

"And it is further agreed, by and between the parties hereto, that this memorandum of agreement may, upon the hearing before the commissioners or the jury, which may be appointed in the proceeding to condemn to be instituted as aforesaid, be read in evidence and considered by such board of commissioners or jury in determining the amount of compensation which shall be paid by said second party for the premises hereinbefore described, for the purposes herein mentioned.

"And it is further agreed, by and between the parties hereto, that this memorandum of agreement shall be a covenant binding upon the parties hereto and their assigns.

"It is also further agreed and covenanted, as a consideration of this instrument, that proceedings in condemnation shall be commenced by the party of the first part at once, by the filing of its petition in the proper court, and that a hearing, either before commissioners or a jury, shall be had without unnecessary delay, such hearing to extend to all other questions of damage not included or provided for by this agreement."

Possession was at once taken and construction proceeded. The contract bears date November 25, 1886. On Decem-

ber 13th the petition for condemnation was filed.    The case was tried to a jury under the provisions of the statute, commencing on May 12th, resulting in a verdict of condemnation and a finding of $1,000 as the value of the land taken, and damage to residue of property of $3,000; judgment in accordance with the verdict, and an appeal taken from such judgment.  Various errors are assigned, but those relied upon by counsel for plaintiff in error are on exceptions taken to the instructions to the jury, given as asked by defendant in error.  The fourth, relied upon as erroneous, is as follows:

" (4) That in determining the compensation for the land taken and the resulting damages, if any, to the remaining land, they may consider not only the uses and purposes to which it is now applied, but also any other reasonable use to which it may be adapted or might be appropriated by men of ordinary prudence and judgment.  That if they believe, from the evidence, the land contains deposits of gold, they may consider that fact as bearing upon the question of the value of the premises, and that, if the presence of gold enhances either the market value or the intrinsic value thereof, due weight must be given to that fact.  But that if the value is not thereby increased, the mere fact that gold can be found upon the premises should be disregarded.  That the fact that the land is designated as placers, and that title thereto was acquired under the mining laws of the United States, constitute no evidence either that the ground in question contains valuable deposits of gold or other mineral, or that the same are valuable for placer purposes."

Messrs. PATTERSON & THOMAS, for plaintiff in error.

Mr. H. T. ROGERS and Mr. A. E. PATTISON, for defendants in error.

REED, C.  Counsel contend that the fourth instruction was erroneous in charging " that the fact that the land is

designated as placers, and that the title thereto was acquired under the mining laws of the United States, constitute no evidence either that the ground in question contains valuable deposits of gold or other mineral, or that the same is valuable for placer purposes." This clause of the instruction, above cited, should not be examined alone, but in connection with the balance of the instruction,— to do otherwise would be in violation of a well-settled rule. The supposed objectionable clause is preceded in the same instruction by the following: " That in determining the compensation for the land taken and the resulting damages, if any, to the remaining land, they may consider not only the uses and purposes to which it is now applied, but also any other reasonable use to which it may be adapted or might be appropriated by men of ordinary prudence and judgment. That if they believe, from the evidence, the land contains deposits of gold, they may consider that fact as bearing upon the question of the value of premises, and that, if the presence of gold énhances either the market value or the intrinsic value thereof, due weight must be given to that fact,"— which materially modifies the clause in question. Taken as a whole, we cannot see that it is objectionable. It fairly presents the premises or basis from which a jury could arrive at the value. The clause objected to, in our view of it, only amounts to saying that the estimated value of the property was not to be enhanced and exaggerated by reason of its having been regarded by the land department of the government and purchased from it as mineral or gold-producing land, and held and worked as mines. If this construction is correct, we cannot regard the instruction as erroneous. We are cited to numerous authorities, which we have carefully examined. They are to the effect that the designation of the character of the land granted in the patent, whether as swamp, agricultural or mineral, is conclusive and cannot be brought in question in collateral proceedings. . Here there was no question in regard to the character. Its character as mineral land was conceded. It

was so regarded in the contract and recognized as being actually occupied and worked as placer mines. But such conclusive characterization did not fix its value. It might, as mineral land, be worth no more than $5 per acre, the price fixed by law; it might be worth thousands; what the value was, was the question to be determined by the jury from the evidence. True, in the statute under which the patent issued, mineral lands are defined to be, in the act of 1872, "as those containing *valuable mineral* deposits," and in the Revised Statutes of the United States, as lands "*valuable* for minerals," and it is said that "*valuable* mineral deposits" in lands belonging to the United States shall be free and open to exploration and purchase. This language being in the statute, it is contended that the last clause of the instruction, "constitutes no evidence either that the ground in question contains *valuable* deposits of gold or other mineral, or that the same are valuable for placer purposes," is at variance with the statute, and that sale of the land as mineral was conclusive of the fact that it contained *valuable* deposits. We do not so regard it. We can only construe it as saying that the land, though containing valuable deposits, was not necessarily of great value,— might not contain gold in sufficient quantity for profitable working, and that the question of value must be determined from the evidence and not from the grant, which, under the law, presumed or imported value.

There is an apparent discrepancy in one respect between the different portions of the charge; that part given at the instance of plaintiff in error was fully as favorable as was warranted, and in some parts might be regarded as contemplating prospective and speculative damage, while that given at the instance of the defendant, though apparently somewhat at variance in this particular with that given on the prayer of the plaintiff, appears to be sustained by, and in the language of, the authorities. That in estimating damages, merely possible or imaginary uses or speculative schemes of its proprietor are to be excluded, see Pierce on

Railroads, 217; *Searle v. Lackawanna & B. R'y,* 33 Pa. St. 57; *Dorlan v. East Brandywine & W. R'y,* 45 Pa. St. 520; *Fleming v. Chicago, D. & M. R. Co.,* 34 Iowa, 353; *Worcester v. Great Falls Manuf. Co.,* 41 Me. 159; *Lake Shore & M. S. R. Co. v. Cin. S. & R. Co.,* 30 Ohio St. 604. That it is proper to put in evidence the present and any reasonable use in the future to which the property may be adapted, but not the intentions of the owner as to such future use of the land, see *Sherwood v. St. Paul & C. R. Co.,* 21 Minn. 127; *Pinkham v. Chelmsford,* 109 Mass. 225; *Fairbanks v. Fitchburg,* 110 Mass. 224.

It is ably urged in argument that the third and fifth instructions were erroneous in the clauses where it was said that the value of the land taken and the damages to the residue should be assessed " in accordance with the situation of the property and conditions existing at that time," viz., at the date of filing the petition.

The language in our Code of Civil Procedure, section 253, is: " In estimating the value of all property actually taken, the true and actual value thereof at the time of the appraisement shall be allowed and awarded," etc.

The statute is imperative, and the instruction is, in violation of it, technically incorrect. In view of what, according to the record, " the evidence tended to show," we cannot say the error was harmless; whether or not there was any change of value between the date of the petition and the time of trial is not shown. As it was erroneous, and counsel for plaintiff in error insist that it was prejudicial, the judgment should be reversed and the cause remanded.

I concur: RICHMOND, C.

I dissent: BISSELL, C.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is reversed.

*Reversed.*