## LAMBORN, APPELLANT, v. BELL, APPELLEE.

1. EMINENT DOMAIN.

The right of eminent domain is an exercise of sovereign power, generally conferred by legislative enactment; yet a constitutional provision that in express terms affirmatively confers the right for particular purposes is likewise an expression of the sovereign will, and grants the right as effectually as if expressed by legislative enactment, and can be enforced when such grant is supplemented by an act of the legislature providing the means for its exercise.

2. CONSTITUTIONAL LAW—EMINENT DOMAIN.

A right of way for a ditch to convey water to operate an electric light plant may be condemned—that being a manufacturing purpose within the meaning of the constitution.

3. CONSTRUCTION, CONSTITUTIONAL.

The rule is that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory.

4. STATUTORY CONSTRUCTION.

The constitution is a general law within the meaning of the act of April 7, 1885, which provides the procedure "in all cases where the right to take private property for public or private use, without the owner's consent,—has been heretofore, or shall hereafter be con-

ferred by general laws or special charter," etc.   The constitution
confers the right and the statute provides for its exercise.
4. EMINENT DOMAIN—PRACTICE.
In condemnation proceedings, the value of the property at the time of
the appraisement, and not at the time of filing the petition, should
be ascertained and allowed, especially when this statutory rule is
invoked by the landowner.

*Appeal from the District Court of El Paso County.*

THIS proceeding was instituted by appellee to condemn a
right of way across the land of appellant, for a ditch to con-
vey water for certain purposes.

A hearing was had before a jury in pursuance of the pro
visions of the eminent domain act, and they found:

*First.* That it was and is necessary for petitioner herein to
take and appropriate the lands of defendant described in the
petition herein for the purpose of furnishing petitioner with
power to run an electric plant to generate electricity for the
purpose of lighting the town and buildings of Manitou with
electric light.

*Second.* That it was and is necessary for petitioner herein
to take and appropriate the lands of defendant described in
the petition for purposes of irrigating the lands of petitioner
lying under said ditch described in the petition ; and assessed
the actual value of the land taken at $12.50.

Decree was entered accordingly.   Defendant below brings
the case here for review.

Mr. A. B. McKINLEY, for appellant.

Messrs. COLBURN & DUDLEY, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

The questions presented by the record are :

*First.* Has the petitioner a right to condemn a right of way
over the lands of the defendant for the purpose of carrying
water to furnish power to operate an electric light plant?

· *Second.* Has he a right to have a ditch across said land for irrigation purposes for his own use, under the facts shown?

The first proposition depends upon the effect to be given to the following constitutional provisions:

" That private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches, on or across the lands of others, for agriculture, mining, milling, domestic or sanitary 'purposes." Sec. 14, art. II, Bill of Rights.

" That private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, and until the same shall be paid to the owner, the property shall not be needlessly disturbed, or the proprietary rights of the owner therein divested; and whenever an attempt is made to take private property for use alleged to be public, the question whether the contemplated use be really public, shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public." Sec. 15, Ib.

" The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided." Sec. 5, art. XVI, Mining and Irrigation.

" The right to divert unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose, and those using the water for ag-

ricultural purposes shall have preference over those using the same for manufacturing purposes." Sec. 6, Ib.

" All persons and corporations shall have the right of way across public, private and corporate lands for the construction of ditches, canals and flumes, for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation." Ib., sec. 7.

It is apparent from the foregoing provisions that our constitution is, in certain particulars touching the right to take private property for private use, exceptional; and for certain enumerated uses changes the accepted rule that the use to which private property may be condemned must be public.

The right of eminent domain is an exercise of sovereign power, and is generally conferred by legislative enactment; yet a constitutional provision that in express terms affirmatively confers the right for particular uses, is likewise an expression of the sovereign will, and grants the right as effectually as if expressed in an act of the legislature, and can be enforced when such grant is supplemented by an act of the legislature providing the means for its exercise.

" A constitution is but a higher form of statutory law, and it is entirely competent for the people, if they so desire, to incorporate into it self-executing enactments. These are much more common than formerly, the object being to put it beyond the power of the legislature to render them nugatory by refusing to enact legislation to carry them into effect. Prohibitory provisions in a constitution are usually self-executing, to the extent that anything done in violation of them is void. But instances of affirmative self-executing provisions are numerous in almost every modern constitution." *Willis v. St. Paul Sanitation Co.*, 50 N. W. Rep., p. 1111. See also *State v. Roberts*, 4 Neb. 216 ; *Thomas v. Owens*, 4 Md. 189.

It becomes necessary therefore to determine whether the purpose relied on in this proceeding, as expressed in the first proposition, is within the class of uses enumerated in section

14 of article 2, and section 7 of article 16 of the Constitution, above cited.

It is insisted by counsel for appellant that these constitutional provisions should be read in the light of the conditions existing at the time they were adopted, and be construed in relation to the evident purposes they were intended to subserve; that the necessity for irrigation and the paramount industry of mining were in contemplation by the framers of the constitution, and the term *milling* was used in section 14 of article 2 with relation to those purposes, and its meaning should be restricted to milling ore and grain.

We think the term *milling*, as used in that provision, should be given its modern acceptation, and held as synonymous with the word *manufacturing*, if not of broader signification, and including that term. Webster, after defining the word mill, says:

"In modern usage, the term *mill* includes various other machines, or combinations of machinery, * * * as cotton-mills, * * * fulling-mills, * * * powder-mills, etc. * * * to some of which the term *manufactory* or *factory* is also applied."

It was held in *Garlin v. Western Assurance Co.*, 57 Md. 515, that a flouring mill came within the term *manufacturing establishment*, as used in a policy of insurance. In discussing this branch of the case, at page 526, Ritchie, J., says:

"The right of the plaintiff to run his mill at night depends upon whether the mill was a 'manufacturing establishment;' * * * But what is to be deemed a manufacturing establishment; or, in other words, what is the signification of the verb *to manufacture*, is for the court to define. The counsel for appellant contended that making flour from wheat, reasoning from the etymology of the word, and the nature of the process, is not manufacturing. But whilst, from its derivation, the primary meaning of the word 'manufacture' is making with the hand, this definition is too narrow for its present use. Its meaning has expanded as workmanship and art have advanced; so that now nearly all artificial products

of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, which after all is but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages, are now commonly designated as ' manufactured.'

" Burrill defines ' to manufacture,' ' the process of making a thing by art,' and cites, Butler, J., in 2 H. Bl. 463, 471. Abbott gives its meaning as ' whatever is made by human labor, either directly or through the instrumentality of machinery.' The definition in Webster is, ' To make or fabricate from raw materials by the hand, by art or machinery, and work into forms convenient for use.' Worcester has in substance the same definition. A case directly applicable, is that of *Schriefer v. Wood*, 5 Blatch. 215, in which animal charcoal, produced by the process of burning bone, in the same manner that wood is exposed to the action of fire, to produce common charcoal, and bone-dust produced by pulverizing or grinding bones, are decided to be ' manufactures of bone.' The question here considered, was involved in that case, and the decision accords with the view we have expressed. We think, therefore, that plaintiff's flour mill, driven as it was by steam, and furnished with a middling purifier, bran-duster, belting and other machinery, was clearly a ' manufacturing establishment.' "

We cite the foregoing at length, as it upholds our view of the meaning to be given to the words " manufacturing purposes," and also shows that the purpose of appellee is within the ordinary meaning of those terms.

So regarded, the word *manufacturing* can be given its well understood meaning, and come clearly within the exceptions enumerated in section 14, article 2, and be given its full signification in section 7 article 16, and also in section 6, article 2, wherein it is designated as one of the beneficial uses for which an appropriation of water may be made.

With this view the different sections may be harmonized and effect given to both, a result always to be reached in the construction of such instruments, if practicable.

" The rule applicable here is, that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory.

" This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication." Cooley's Const. Lim. 72.

That the words, " manufacturing purposes," used in these several provisions should be taken in their ordinary acceptation, we have no doubt; and the purpose of petitioner coming within their ordinary meaning, we are to determine whether the exercise of the right is available to him under the terms of section 7, article 16, and the legislation of the state upon the subject of eminent domain.

While it may be conceded that the constitutional provision is not self-executing in the sense that it does not provide the manner in which compensation can be assessed, it nevertheless does confer the right in express terms; and it only remains to be determined whether provision is made to carry out such right.

The eminent domain act provides, (sec. 2, p. 201, Laws of 1885:) " That in all cases where the right to take private property for public or private use, without the owner's consent, * * * has been heretofore, or shall hereafter be conferred by general laws or special charter," etc.

The constitutional provision above referred to must certainly be regarded as a general law conferring the right within the language of this section ; hence, the act providing the

procedure to ascertain the compensation makes the right available, and the question whether the constitutional provision is or is not in itself self-executing becomes immaterial.

We think, under the provisions cited, the right to condemn a right of way for a ditch over appellant's land for the purposes designated is conferred, and that the eminent domain act provides for the exercise of that right.

The further question of the right of petitioner, under the facts in evidence, to avail himself of this right for irrigating his land is not sustained. The delay of two years in completing the ditch to such land, in view of the admitted fact on the part of petitioner that he does not at the present time need the same or intend to utilize it, is a virtual abandonment of the right for that purpose.

The court instructed the jury that the measure of defendant's damages was the true and actual value of the property taken on March 18, 1887, which was the date of filing the petition for condemnation. The trial for the purpose of appraising and awarding compensation and damages did not occur until March, 1889. By statute it is provided that in estimating the value of the property taken, the true and actual value *at the time of the appraisement* shall be allowed and awarded. The statutory rule as to the time of estimating the value has been declared imperative in several cases. *Colo. Cent. R. R. Co. v. Allen,* 13 Colo. 238; *Twin Lakes Co. v. Colo. Midland R. R. Co.,* 16 Colo. 1. It will be observed that in the cases cited, as in this case, the statutory rule was invoked by the owner; and in such case, we have no doubt the strict statutory rule should be enforced. The Constitution, art. 2, sec. 15, guarantees just compensation to the owner when property is taken without his consent; and this right must be jealously guarded. If, however, there should be a diminution in the value of property sought to be taken, pending proceedings under the statute of eminent domain, there might be some question whether the statutory rule could be held to secure just compensation to the owner within the meaning and intent of the constitution. But in this case, the owner

VOL. XVIII—23

having invoked the statutory rule, the trial court should have directed the jury to award the value of the property at the time of the appraisement. For this error the judgment must be reversed and cause remanded.

*Reversed.* ·