[No. 6276.]

LAVELLE ET AL. v. TOWN OF JULESBURG.

1. **Bill of Exceptions—Defects in,** no grounds to quash the writ of error, or affirm the judgment.—(292)

2. **Eminent Domain—Petition** — The petition need only allege the ultimate facts which entitle the petitioner to initiate the proceedings, and not the evidence to prove them, e. g., where the petition is presented by an incorporated town, through its mayor, and verified by him, and avers a vote of the town to establish waterworks, that the board of trustees has selected the premises in question, etc., it need not set forth how the mayor is authorized to act, or that he has authority to appropriate the funds of the town.—(292, 293)

3. —— **Order for Possession — Error in,** not ground to reverse the final order.—(294)

4. ——**Petition by Town — Review of Municipal Action —** Where the petition is presented in the name of a town, the action of the town council in selecting the premises in question will not be reviewed by the court unless it clearly appears to be fraudulent or unreasonable.—(294, 295)

5. ——**Of the Answer—**An averment that the selection by the town of the particular premises sought to be taken "was

not made in good faith," is a mere conclusion of. the pleader, and goes for naught.—(295)

Where the petition shows that the premises in question have been selected by the authorities of the petitioner town, as the site of a power plant for the operation of a system of public waterworks, a mere denial of the power of the town to condemn the premises for such a purpose, or that the use is a public one, presents no question of either law or fact.—(297)

6. ——Damages to Property Not Taken—The landowner is not entitled to an allowance, in respect of the residue of his property, not taken, for noise, smoke and vapors which will be generated by the operation of the public waterworks for which the lands are sought to be taken. These inconveniences are suffered by the general public, and no private person is entitled to any immunity or advantage in respect thereof.—(300)

But where the premises sought are used by the landowner as the means of access to the premises not taken, the injury occasioned by the taking will, in this respect, be special to him, and he is entitled to compensation therefor.—(301, 302)

7. ——Time of Appraisement—Under the statute (Mills' Stats., § 1731; Rev. Stats., § 2431), the actual value of the properties taken, estimated at the time of the appraisement, must be allowed.—(302)

8. Municipal Corporations—Presumption of Corporate Capacity—Where it appears that a town, acting as such, has, for more than twelve years, exercised the powers of a municipal corporation, and for more than two years has had a full complement of officials, exercising their offices, the regularity of its organization is conclusively presumed.—(298)

9. Bill of Exceptions—The opinion in Big Kanawha v. Jones, 45 Colo. 381, referred to as prescribing the proper formalities in the preparation and certification of a bill of exceptions.—(302)

10. ——Objections to—Waiver by Delay—Objections taken to a bill of exceptions more than two years after the service of the sci. fa. to hear errors, come too late.—(303)

*Error to Sedgwick County Court*—Hon. A. H. MILLER, Judge.

Messrs. FRANKLIN & TEDROW for plaintiffs in error.

Mr. C. H. PIERCE for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiffs in error were respondents in a proceeding instituted by the town of Julesburg to condemn a lot as a site upon which to erect a power house for the operation of a waterworks system then being constructed by the town. The jury impaneled assessed the value of the lot at $720.00, and a judgment or decree was entered, to the effect that on payment of this sum the town be permitted to take possession of the lot, and appropriate it to the public use for which it was sought to be condemned. The respondents have brought the case here for review on error.

Defendant in error has filed a motion to dismiss the writ of error and affirm the judgment, based upon the grounds that a proper bill of exceptions is not filed; that the pretended bill of exceptions was not approved, allowed and certified to be full, correct and complete as required by law and the rules of this court, and that it fails to state that it contains all the evidence. The motion to dismiss must be denied. Even if the bill of exceptions is defective, there may be matters disclosed by the record proper constituting reversible error which plaintiffs in error are entitled to have considered, independent of the bill of exceptions. It will be time enough to consider the grounds urged against the bill of exceptions when we come to consider the argument of counsel for respondents, relating to matters which must appear by the bill of exceptions.

When the petition was presented, the court granted an order for the immediate possession of the lot sought to be condemned upon the deposit of the sum of eight hundred dollars. The deposit was made and possession taken. The order is claimed to be erroneous for the reason that the affidavit upon

which it was granted, although made by the mayor, does not disclose that he was authorized by the town authorities to take this step, or that he assumed to represent the town in making request for immediate possession, and that it does not appear he had any authority to appropriate the funds of the town for the purpose of making the deposit required. This contention is clearly without merit. The requisite petition was on file, from the allegations of which it appears that the legal voters of the town had authorized the board of trustees to construct a system of waterworks for fire and domestic purposes; that the trustees had begun the construction of the system; that they had selected the lot in question upon which to erect a power house to operate it; and from the affidavit it is made to appear that the party making it is the mayor of the town; that the town authorities had ordered that the possession of the lot in question be secured by condemnation proceedings for the immediate construction of a power house. The affiant also prays on behalf of the petitioner for an order of possession pending the final determination of the condemnation proceedings.

We think this is sufficient from which to fairly infer, when the mayor, the chief executive officer of the town, is acting in its behalf, that he is duly authorized to represent it and take such steps in detail as were necessary to prosecute and carry out the purpose for which the condemnation proceedings were instituted, and that the money deposited as a condition precedent to taking possession had been duly appropriated for that purpose. It was only necessary to plead the ultimate facts with respect to these various matters, and not the evidence to prove them. So far as advised from the record, it does not appear that any of the questions just considered were presented to the trial court, and for

this reason alone we might well refuse to consider them here.

It is next urged that the statute authorizing possession of property sought to be condemned to be taken possession of *ex parte* is a violation of the constitution of the United States and of this state, which provide that no person shall be deprived of property without due process of law. It is wholly unnecessary to consider this question. The order for possession was interlocutory. Such orders, even if erroneous, will not justify a reversal of the final judgment unless it appears that they prejudicially affected the substantial rights of the complaining party on the final adjudication.—*Colo. F. & I. Co. v. Four Mile Ry. Co.*, 29 Colo. 90. No such showing is made here.

Respondents requested the appointment of a board of commissioners to determine the necessity for taking the lot in question, which was denied. Thereupon they requested the court to determine all questions presented by their answer, except damages, which was refused. Neither of these rulings, when the entire record is considered, was erroneous. The trustees of towns are expressly authorized to condemn so much private property as may be necessary for the construction of waterworks for the town which they represent.—Subdivision 70, § 6525, Rev. Stats. The compensation for land so taken is to be paid by the town. It is the province of the town authorities to determine what property shall be taken and condemned upon which to construct a plant to operate a waterworks system belonging to the town. As applied to the facts of this case, the exercise of discretionary power and judgment of municipal officers, when acting within the scope of their authority, is conclusive unless it clearly appears their action was fraudulent or unreasonable.

—*Kirkwood v. School District*, 45 Colo. 368; *Warner v. Town of Gunnison*, 2 Col. App. 430; *City of Denver v. Kennedy*, 33 Colo. 80.

Could the action of the town authorities in such matters be submitted to either a court or commission, it might be that the judgment of the former would be regarded as not sound; but to permit this question to be gone into could result in substituting the judgment of others for those to whom the statute has specially delegated the power to determine what property shall be taken for the public use under consideration, how much, and its location. The results which would follow any inquiry whatever on the subject, and a consideration of the varied questions which town officials must settle in selecting a site for such a public use, stamps it as unsound, unless the case presented falls within the exceptions. No showing is made by the answer which states a case within any of such exceptions. Not a fact is stated from which it could be inferred that the town authorities had acted fraudulently, or in bad faith, or unreasonably. True, it is alleged in the answer that the selection of the lot in question was not made in good faith, but that is merely a conclusion of the pleader, instead of stating facts which might disclose such a condition. It is also true the answer alleges in substance that the town of Julesburg is possessed of other property which is more suitable and proper for the location of a power house; that there is vacant and unoccupied land in close proximity which could better be used for this purpose; that the selection of the lot in question was extraordinary and unnecessary, and that there is no necessity for taking this particular lot as a site upon which to construct a power plant, in that it is neither suitable, proper nor necessary for that purpose. This is nothing more nor less than requesting that

the judgment of a court or commission be substituted for the judgment of the town authorities. The latter must select a site for a power house. Neither a court nor a commission can do this for them. If it were possible to attack the acts of municipal officers in selecting a site for a power house to operate a waterworks system on the averments of the answer to which we have referred, then each time they did so their judgment might be interfered with to such an extent as to practically deny them the exercise of that authority and discretion with which they are exclusively invested by statute. As commissioners would have had no function to perform if they had been appointed, it was not error to refuse to appoint them. We must not be understood, however, as indicating what questions, under a proper answer, might be submitted to the determination of commissioners on the subject under consideration. That proposition is not presented.

We shall next consider the action of the court in refusing the request to determine all questions except damages. It certainly did not err in refusing to determine the question of necessity for taking, as the answer did not tender that issue. The answer of the respondents was in two parts, the first of which, so far as necessary to consider at present, in view of what has already been determined, denied that Julesburg was an incorporated town or municipal corporation, or that it had the right of eminent domain, and denied that the purpose for which the lot was sought to be taken was public, within the meaning of the constitution of the state, or that such purpose was within the power conferred by law upon petitioner.

The further and separate answer, in addition to the averments before referred to, alleged, upon information and belief, that the proceedings authoriz-

ing the trustees of the town to construct a water-works system were illegal and void. Under our constitution, whenever private property is sought to be taken for an alleged public use, the question whether the contemplated use be really public shall be a judicial one; but that provision is intended to prevent the legislature declaring that a use is public which, in law and in fact, is not, and has no application to any question involved in the case at bar. Land sought to be condemned by a town, upon which to construct a power plant to operate a waterworks system belonging to the town is undoubtedly to be devoted to a public use. The legislature has conferred upon the town the authority to condemn land for this purpose. Merely denying that the purpose for which the lot was sought to be taken as set out in the petition was public, or that petitioner was without power to condemn the lot for that purpose, did not raise a question of either law or fact, with respect to a public use, or the power of the petitioner in the premises.

It is true, as said in *U. P. R. R. Co. v. Colorado Postal T. C. Co.*, 30 Colo. 133, that if for any reason the petitioner is not entitled to exercise the right of eminent domain, or take a particular tract, these questions should be determined by the court *in limine*. The right to condemn the particular lot or the question of good faith of the town is not involved, for reasons already given.

The only questions which can be said to be presented by the answer for the court to determine, were, whether the town was incorporated, and the proceedings authorizing the construction of the waterworks system regular. Conceding, for the sake of the argument, that the answer was sufficient to raise these questions, and that respondents were entitled to raise them, the record discloses that they

were determined by the court on evidence introduced by the petitioner. There may not be any special findings on these subjects, but evidence touching them was heard, and there is nothing in the record to indicate that the court did not find in favor of petitioner on these issues. In the absence of specific and unambiguous findings of fact to the contrary, appellate courts must assume that the lower court did find those facts which are responsive to the issues made by the pleadings, and essential to the judgment rendered.—*Fanny Rawlings M. Co. v. Tribe,* 29 Colo. 302.

But counsel contends that petitioner failed to prove that Julesburg was a municipal corporation. The evidence on this subject is to the effect that it had a full complement of town officials, and that it had had such officers for more than two years previous to the date of trial, exercising the duties of their offices; and that the town, as such, had for upwards of twelve years exercised the rights and powers of a municipal corporation. Under such a state of facts, the town, by virtue of section 6746, Rev. Stats., was conclusively presumed to be a regularly organized and legally incorporated municipality; and respondents were precluded from questioning the legality of its formation, organization or incorporation.—*The People ex rel. v. Curley,* 5 Colo. 412. Without expressing any opinion thereon, we merely suggest that it may be doubtful if respondents were entitled to question the legality of the incorporation of petitioner.—*U. P. R. R. Co. v. Colo. Postal T. C. Co., supra; Eddleman v. Union Co. Traction & P. Co.,* 217 Ill. 409.

It is also claimed that the evidence is insufficient to establish that the proceedings authorizing the trustees to construct a waterworks system were legal. Without entering into details, we think it is

sufficient to say that the testimony introduced by petitioner *prima facie* established that the preliminary proceedings were regular. No testimony was offered by respondents to overcome it.

The court at first refused to hear any testimony on any issue raised by the answer, but subsequently did hear the testimony on the questions just considered, although not until after the jury called to assess damages had retired for deliberation. This was irregular, but not prejudicial.

In this connection the action of the court in sustaining a motion to strike the whole of the further and separate answer, based upon the grounds that it was incompetent, uncertain, immaterial and insufficient, and set forth no sufficient allegation to establish, or tending to establish, a defense, and also a demurrer to the remaining portion of the answer, upon the ground that it was insufficient to constitute a defense, will be considered. Technically, this was probably error, because some portions of the answer, so far considered, may have tendered issues which it was necessary for the court to determine, but inasmuch as it subsequently heard evidence on the issues thus made, the error committed was cured, and respondents were in no wise prejudiced or precluded from offering testimony which, perhaps, they were entitled to offer, or which the petitioner, by reason of the issues made, was required to, and did, establish.

On behalf of respondents it is contended that the jury to assess damages was summoned in an irregular manner, and that the motion to quash the venires and panel should have been sustained instead of overruled. Under decisions of this court and the statutes, parties ought not to have any trouble in securing a legal jury in a lawful manner, and as the cause must be reversed for errors which

we will next consider, we shall not determine whether there was any such irregularity in summoning the jury, or such error in overruling the motion to quash, as would entitle the respondents to successfully complain.

The further answer alleged that Lucas was the owner of contiguous property upon which buildings used for stores and other purposes were erected, to which there was no means of ingress or egress except over the premises sought to be condemned, and that taking this lot would damage such contiguous property. Counsel for respondents offered to prove by deed that respondent Lucas was the owner of an interest in lots 7, 8 and 9 in the same block as the one sought to be condemned, which was denied. As we understand the record, the portions of the lots mentioned in the deed immediately adjoin lot No. 10, the one in controversy. Respondents then offered to prove that this lot and the part of lots 7, 8 and 9 described in the deed, constituted one continuous tract, used together by Lucas for a common purpose, and that the taking of lot 10 and the erection and maintenance thereon of a pumping station would cause damage to the part of lots 7, 8 and 9 in which Lucas was interested by depriving this tract of the means of ingress and egress from the rear, and by reason of the noise, smoke, noxious vapors and increased danger from fire, to which petitioner objected, and the objection was sustained. It is clear that damages for noise, smoke, vapors and increased dangers from fire were not proper to consider. This inconvenience and injury would be common to all other property owners adjoining or adjacent to the power plant. The owner of property condemned is not entitled to recover damages to the residue for annoyance and inconvenience suffered by the general public. The damage to such residue is limited to

some right or interest therein enjoyed by the owner, and not shared or enjoyed by the public generally.— *Gilbert v. Greeley, S. L. & P. Ry. Co.,* 13 Colo. 501; *Denver & S. F. Ry. Co. v. Hannegan,* 43 Colo. 122.

For such special damages the owner is as much entitled to compensation as he is for the value of the property actually taken. Whether or not when one tract is taken damages to another immediately adjoining shall be assessed, is not always easy to determine. The rule, however, as applicable to this case is, that if several contiguous tracts in reality constitute one entire parcel used for one general purpose by the common owner, the particular and special injury which will result to the part not taken should be determined and compensation made accordingly.—15 Cyc. 729.

As we understand the record, Lucas is the owner of an interest in part of lots 7, 8 and 9, upon which improvements are located, and that lot 10 affords, and is used by him, as a means of ingress and egress to the rear of these improvements, of which he will be deprived. This is a right peculiar to him. The extent, then, the market value of his interest in part of lots 7, 8 and 9 will be depreciated, if any, by being deprived of lot 10, is compensation which should be awarded in addition to the value of the property actually taken.—*Denver & S. F. Ry. Co. v. Hannegan, supra; Colo. M. Ry. Co. v. Brown,* 15 Colo. 193.

The court not only erred in striking the portion of the answer claiming damages to the part of lots 7, 8 and 9, but also erred in refusing to permit respondent Lucas to introduce testimony to establish them.

Possession of the property was taken March 15, 1907. Over the objection of counsel for respondents,

a witness on behalf of petitioner was asked to state the value of the lot as of that date. Counsel for respondent also offered to prove the value of the lot at the time of the trial, which was denied. Later the court instructed the jury that the measure of damages to which the owners were entitled was the market value of lot 10 at the time of taking. Both the ruling and the instruction are erroneous. The statute, § 2431, Rev. Stats., particularly provides that in estimating the value of property actually taken, the true and actual value at the time of the appraisement shall be allowed and awarded. Under this statute this court has repeatedly decided that the true and actual value of the property condemned belonging to the respondent at the time of the appraisement is the measure of compensation in condemnation proceedings for the property actually taken.—*Colo. Central Ry. Co. v. Allen,* 13 Colo. 229; *Colo. M. Ry. Co. v. Brown, supra; Twin Lakes H. G. Min. Synd. v. Colo. M. Ry. Co.,* 16 Colo. 1; *Lamborn v. Bell,* 18 Colo. 346.

Numerous other errors are assigned which do not appear to justify discussion, or are of that character that can readily be avoided at another trial. In considering the case we have not been unmindful of the grounds assigned by counsel for petitioner in support of the contention that the bill of exceptions should not be considered. None of these objections have merit, unless it be the one relating to the certificate of the trial judge. In some respects the certificate is faulty, but not so much so as the one considered in the case of *Big Kanawha Leasing Co. v. Jones,* 45 Colo. 381, to which attention is now directed as prescribing the formalities to be observed in the preparation and certification of a bill of exceptions. In the circumstances of this case, how-

ever, petitioner is not in a position to have the alleged defects in the certificate considered. The transcript, which included the bill of exceptions, was lodged in this court and writ of error served nearly two years and five months, and *scire facias* served more than two years, before the motion under consideration was made. The abstract of record and briefs of respondents were filed and served upon counsel for petitioner nearly two years before such motion was filed. In such circumstances the objection to the certificate that it does not fully comply with all the requirements of the code, comes too late.—*Reynolds v. Campling,* 21 Colo. 86; *Mason v. Seiglitz,* 22 Colo. 320; *Mackey v. Monahan,* 13 Col. App. 144; *Bd. Co. Commrs. v. Tulley,* 17 Col. App. 113; *Merriner v. Jeppson,* 19 Col. App. 218.

The judgment of the county court is reversed, and the cause remanded, with directions to assess the compensation and damages in accordance with the views expressed in this opinion. From the record before us, we are of the opinion that a new trial should be limited to these questions on the pleadings relating to these subjects as originally filed.

*Reversed and remanded,*
*with directions.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL concur.