STATE DEPARTMENT OF HIGHWAYS,
State of Colorado,
Petitioner-Appellant,

v.

Louise MAHAFFEY; First National Bank in Grand Junction, Trustee; and Gena M. Harrison, as Treasurer of Mesa County, Respondents-Appellees.

No. 82CA0886.

Colorado Court of Appeals,
Div. II.

Aug. 30, 1984.

Rehearing Denied Sept. 27, 1984.

Certiorari Granted March 18, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard Forman, Sol. Gen., Thomas W. Gibb, Asst. Atty. Gen., Denver, for petitioner-appellant.

Gorsuch, Kirgis, Campbell, Walker & Grover, Joseph M. Montano, Denver, Williams, Turner & Holmes, J.D. Snodgrass, Grand Junction, for respondents-appellees.

SMITH, Judge.

In this eminent domain proceeding pursuant to § 38–1–101, C.R.S., et seq. (1982 Repl.Vol. 16A) petitioner, State Department of Highways (department) appeals the $168,500 award of a commission of freeholders to the respondent landowners as compensation for the taking for highway construction purposes of approximately 143 acres near the town of Debeque in Mesa County.

The department asserts as grounds for reversal: (1) that evidence of property value offered by landowners' experts was based on "hypothetical income" and on assumptions not supported by evidence in the record; (2) that the trial court erred in denying the department's proffered instruction concerning the calculation of reasonable market value; (3) that it was error for the trial court to refuse to permit the department to impeach the landowners' expert appraiser; (4) that the department was denied a fair trial because one of the commissioners on the panel owned property he knew was going to be condemned and knew he would therefore have to negotiate in the future with the department for compensation. We reject each of these contentions and, thus, affirm.

### I. Evidence

Upon the department's motion, the trial court held an *in limine* hearing to determine whether certain evidence and opinions of value based on the capitalization of net income derived from the extraction of gravel deposits on the property taken could be considered in ascertaining the fair market value. The court ruled that such evidence would be admissible if a proper foundation with respect to the quantity of gravel and its commercial feasibility could be established.

At trial before the commission, such foundation evidence was presented and the opinion evidence was received. The department argues here that it was error to admit evidence concerning income which could be derived from the gravel, asserting that the property was zoned agricultural-transitional use, has always been used for agricultural purposes, and was non-income producing for the purpose of extracting gravel on the date of the taking. It argues, therefore, that fair market value could not be based on the net income from gravel extraction because such evidence would be too speculative.

Testimony elicited revealed that the property taken contained certain quantities of commercially salable gravel. A consultant engineer, one Armstrong, testified to his estimation of the amount of recoverable gravel and testified that there was a demand for such gravel in the area.

A manager for a construction company testified that a market existed for the gravel and he estimated its extraction could be accomplished in as few as 10 years, with 80,000 yards being extracted per year.

Next, a professional real estate appraiser was called by the landowners to render an opinion on the fair market value of the property. He explained in detail that he had used both the comparable sales and the capitalization of income methods in determining the fair market value of the property.

He testified that in applying the capitalization method, he considered lease rentals which could be generated by potential future leases or royalties from the gravel deposits on the subject property. He theorized, in essence, that the annual net return derived from lessor-extractors of the gravel would represent a reasonable return on the value of the landowner's investment in the land over the economic life span of the gravel. He analogized this annual capitalized net income to an annuity derived from standard annuity tables and paid out accordingly.

This expert then gave his opinion as to potential income royalties from the gravel based on evidence from payment provisions included in various lease agreements for similar gravel bearing properties in the area. He also considered the evidence elicited from the engineer and manager as to the market and costs of extracting gravel. In his opinion, thirty-five cents a yard was an average and appropriate value for the estimated 80,000 yards of extractable gravel per year. In his calculation, the gross income per year from the property would therefore equal $28,000 (35 cents × 80,000 yards). The yearly net operating income, after an estimated $890 in expenses were deducted, was calculated to be $27,110. He multiplied this annual net income figure by 5.65 which represented a 12% capitalization factor over a ten year period. The appraiser thus arrived at his opinion that the value for the 40 acres of gravel bearing property was $153,000. His final opinion for total just compensation of the entire 143 acres, including the 40 acres of potentially extractable gravel was $249,725.

Real estate appraisers commonly utilize three methods of property valuation: (1) Market data or comparable sales; (2) cost of construction or reproduction costs less depreciation; and (3) capitalization of income. Depending on the location and type of property involved, the appraiser may use any one, two, or all three methods to evaluate the fair market value of the property. In this instance, since the property was essentially vacant and contained income producing gravel deposits, the appraiser chose to base his opinion on the comparable sales approach for the non-gravel bearing property and the income capitalization method for the gravel bearing portion of the property.

The Colorado Supreme Court has accepted all three of these methods of valuation and has specifically recognized, in appropriate cases, the capitalization of income approach. *See Denver Urban Renewal Authority v. Berglund-Cherne Co.*, 193 Colo. 562, 568 P.2d 478 (1977).

Thus, the threshold question does not concern the validity of a particular

method, but rather is whether the capitalization of income method of appraisal is applicable to a gravel rich property which is not income producing on the date of taking but has such income potential. Under the facts presented here, we believe it is.

The capitalized income method recognized in *Berglund-Cherne* is utilized to establish a value that reflects the net income generated by the property during its productive life. Thus, it is most often applied in cases where the property is income producing at the time of taking such as where the owner has leased the property or receives royalties from a particular use of the land. *See e.g., Denver Urban Renewal Authority v. Berglund-Cherne, supra; State ex rel State Highway Commission v. Moore,* 565 S.W.2d 810 (Mo.App.1978); *Iske v. Omaha Public Power District,* 185 Neb. 724, 178 N.W.2d 633 (1970). In such cases, there are established figures upon which to derive an opinion of value using the capitalized income approach.

In this instance, the property contained large quantities of gravel in place which had not been commercially extracted as of the date of the taking. The department contends that the landowners' appraiser based his appraisal on assumptions that the gravel was commercially extractable and then appraised the property as if it were income producing on the date it was taken. It argues that such an evaluation contravenes the rule set forth in *State Department of Highways v. Schulhoff,* 167 Colo. 72, 445 P.2d 402 (1968). However, even in *Schulhoff,* the Supreme Court recognized that it is proper to show that a particular tract is suitable, available and valuable for that future use and purpose.

■ It is true that at the time the department took possession, there was no commercially established gravel operation on the land, nor had the landowners taken any preliminary steps toward gravel production such as obtaining permits. However, in condemnation cases, evidence of a reasonable future use is admissible to determine the present fair market value of

property, *City & County of Denver v. Quick,* 108 Colo. 111, 113 P.2d 999 (1941); *Wassenich v. City and County of Denver,* 67 Colo. 456, 186 P. 533 (1920); C.J.I. 33:6 (2d. ed. 1980), and compensation is not limited to the value of property for the uses to which it is devoted at the time of the taking. *City & County of Denver v. Minshall,* 109 Colo. 31, 121 P.2d 667 (1942); *Colorado M. Ry. Co. v. Brown,* 15 Colo. 193, 25 P. 87 (1890).

■ In fact, evidence of the amount, quality, and quantity of gravel is admissible and can be considered insofar as it affects the market value of the land taken. *Twin Lakes Hydraulic Gold Mining Syndicate, Ltd. v. Colorado M. Ry.,* 16 Colo. 1, 27 P. 258 (1891).

■ Because of the very nature of minerals such as gravel, there are necessarily elements of speculation and uncertainty in relation to valuation opinions. *See United States v. 179.26 Acres of Land,* 644 F.2d 367 (10th Cir.1981). We are convinced, however, from a complete review of the record, that the landowners' evidence was sufficiently specific to allow their expert appraiser to make a reasonable opinion as to the value of the property. The evidence was also sufficient for the commissioners to arrive at a reasonable and informed decision as to the fact of value. In this case then, the fact that some speculation is required does not defeat the admissibility of the evidence but rather relates to the weight to be given to that evidence.

■ The commissioners are empowered to make their own evidentiary decisions. *State Department of Highways v. Pigg,* 656 P.2d 46 (Colo.App.1982); *Denver Urban Renewal Authority v. Berglund-Cherne, supra.* Where the commission was properly instructed, held evidentiary hearings, observed the demeanor of the witnesses, made its own determination of credibility, and arrived at an award within the scope of the evidence, we will not reweigh the evidence, but rather will accept the findings and award of the commission.

## II. Instructions

■ The department submitted the following instruction to be given the commission:

> "You are not to attempt to calculate the reasonable market value of the mineable property by multiplying any volume figures of gravel in place testified to in this case by any unit price per ton. The quantity and quality of such gravel can be considered by you only insofar as the presence of such gravel affects the present market value of the land as a whole."

The department contends that it was error for the trial court to refuse to give the proffered instruction because the evidence received by the commission permitted the commissioners to use an improper measure for determining fair market value. We disagree. Since, as we concluded above, the evidence was properly admitted and since, under the circumstances, the capitalization of income approach was applicable in determining fair market value, the instruction was properly denied. *State Department of Highways v. Schulhoff, supra.*

## III. Impeachment of Expert

■ The department next contends that it was error for the trial court to refuse to allow the department to impeach the landowners' appraiser on cross-examination. The department attempted to show inconsistencies between the expert's trial testimony and statements made earlier in deposition and in a prior appraisal report. We perceive no error.

The original taking by the department did not include a 2.2 acre tract of the landowners' property north of the Rio Grande Railroad right-of-way. Landowners' appraiser appraised the subject area based on this fact, and concluded in the deposition and initial appraisal that the 2.2 acres was the remainder and that it was damaged to the extent of 95 per cent of its value because of lack of access.

Subsequently, the department amended its taking to include the 2.2 acres. At trial, the expert included the 2.2 acres as part of the taking and valued it consistently with the balance of the property taken. Since there was no longer a remainder, no issue relative to access was present.

In both instances, the expert arrived at the same figures for 100% of the value of the 2.2 acre tract. His conclusions and testimony at trial were based on different facts, assumptions, and circumstances which arose from the amended condemnation petition. His initial appraisal, and the answers given in deposition did not, therefore, pertain to the amended taking. It would be unfair to permit impeachment based upon prior statements made in a different context and relating to an entirely different factual situation. We thus conclude that there was no error in the trial court's refusal to allow inquiry into the prior appraisal and depositional testimony.

## IV. Fair Trial

■ Finally, the department contends that it was denied a fair trial because one of the commissioners had acquired property which, he had been informed, would be subject to condemnation for highway purposes, and thus, such commissioner knew he would soon be negotiating with the department at the time of his participation in this action. We reject this argument.

In May 1981, the department began appraising land needed for the widening of Road 32 adjacent to Highway I-70. The record owners of the parcels to be acquired for Road 32 were contacted and informed of the proposed acquisition pursuant to statute. On July 31, 1981, one of the parcels included in the Road 32 acquisition was conveyed to Donald E. Gulley. Gulley was thereafter appointed as one of the commissioners in the instant case.

Nearly ten months elapsed prior to the convening of this commission. On May 2, 1982, the commissioners filed their certificate of ascertainment and assessment in this case. The department did not attempt to challenge Gulley's presence on the commission until July 1982, when it sought permission to file a second motion for new

trial based on newly discovered evidence of Gulley's purported conflict.

The department's original motion for new trial had already been denied by the trial court and this case was on appeal. We remanded to the trial court for a ruling on the department's motion for new trial based on newly discovered evidence. On October 4, 1982, the trial court entered the following order with respect to the Motion:

"[T]he alleged basis for new trial consists in assertion by the Department that one of the three commissioners was an owner of property which was scheduled for condemnation for highway purposes, and that such information was not revealed by the commissioner to anyone connected with the present hearing, and was only ascertained subsequent to the hearing by the Petitioner by accident of some kind; *there is no showing that such a situation would have changed the result of the award, or that it in any way influenced the judgment of the commissioner concerned; the law requires that each commissioner be a landowner and most, if not all, land in the state is amenable to taking upon payment of reasonable compensation.*"

 The granting of a motion for new trial based on newly discovered evidence is within the discretion of the trial court. *Meyer v. Schwartz,* 638 P.2d 821 (Colo.App. 1981); *American National Bank of Denver v. Christensen,* 28 Colo.App. 501, 476 P.2d 281 (1970). In the absence of any abuse of discretion in the trial court's disposition of the matter, we may not disturb it. *Bushner v. Bushner,* 141 Colo. 283, 348 P.2d 153 (1959). We find no abuse of discretion by the trial court.

The evidence revealed that the department had at least constructive knowledge of Gulley's interest even before he was appointed to serve. The department, however, did not object to Gulley's serving as a commissioner until after the commission had returned its certificate of ascertainment and assessment and the same had been confirmed by the court. Gulley thereafter filed an affidavit in which he affirmed

that the potential condemnation of his property had not affected his decision. The trial court apparently accepted and believed the affidavit.

Absent a showing of improper conduct on Gulley's part, we will assume he did not violate his oath as a commissioner nor that his affidavit was false. *See Board of County Commissioners v. Barron,* 487 P.2d 579 (Colo.App.1971) (not selected for official publication). This evidence could have been produced before or during trial but was not. Such evidence, in our view, and in view of the trial court's order, was immaterial to the condemnation proceeding and, even if received, would not have changed the result of the proceedings.

Judgment affirmed.

BERMAN and VAN CISE, JJ., concur.