Jack J. GRYNBERG, Plaintiff–Appellee and Cross–Appellant,

v.

CITY OF NORTHGLENN, Colorado, Defendant–Appellant and Cross–Appellee.

No. 90CA0721.

Colorado Court of Appeals, Div. I.

Oct. 10, 1991.

Rehearing Denied Nov. 21, 1991.

Certiorari Granted April 27, 1992.

* Sitting by Assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Welborn, Dufford, Brown & Tooley, P.C., Phillip D. Barber, Keith D. Tooley, Denver, for plaintiff-appellee and cross-appellant.

Hayes, Phillips & Maloney, P.C., Herbert C. Phillips, James S. Maloney, Denver, for defendant-appellant and cross-appellee.

Kathleen E. Haddock, Denver, for amicus curiae Colorado Mun. League.

Wayne D. Williams, Michael L. Walker, Denver, for amicus curiae City and County of Denver By and Through its Bd. of Water Com'rs.

Gale Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas W. Gibb, Asst. Atty. Gen., Denver, for amicus curiae Colorado State Dept. of Highways.

Opinion by Judge PIERCE.

Defendant, City of Northglenn, appeals a judgment entered upon a jury verdict awarding plaintiff, Jack Grynberg, $646,-930 as just compensation in his claim for inverse condemnation. The City also appeals the award of attorney fees and prejudgment interest to plaintiff. On cross-appeal, plaintiff appeals the sufficiency of the attorney fees and prejudgment interest awards. We affirm.

Plaintiff initially sought damages against the City and its contractors for geophysical trespass. This court affirmed the trial court's summary judgment. *Grynberg v. City of Northglenn,* 703 P.2d 601 (Colo. App.1985). Our supreme court granted certiorari and reversed. *Grynberg v. City of Northglenn,* 739 P.2d 230 (Colo.1987).

Plaintiff subsequently elected to proceed upon his claim of inverse condemnation, and the parties agree on appeal that the controlling facts are as set forth in the above supreme court decision. On October 26, 1988, venue was changed to Weld County to permit a trial before a jury of freeholders. *See* § 38–1–106, C.R.S. (1982 Repl.Vol. 16A).

## I.

The City first contends that no evidence was presented to establish a taking of, or damage to, plaintiff's property, necessary to allow plaintiff to proceed on his inverse condemnation claim. We conclude that there was sufficient evidence of damage.

Citing *Lipson v. Colorado Department of Highways*, 41 Colo.App. 568, 588 P.2d 390 (1978), the City argues that there was no physical ouster and that, therefore, there was no interference with plaintiff's right to explore the mineral estate. Further, the City argues that plaintiff maintained the right to mine the mineral estate despite its acquisition of the surface estate and planning of the reservoir. In any event, it points out that construction of the reservoir began after plaintiff assigned his coal lease.

Plaintiff points to three acts by the City which, he contends, support the trial court's finding of a taking of or damage to his property for which just compensation is owed. These acts are the acquisition by the City of the surface estate, the City's unauthorized entry and exploratory drilling on the mineral estate, and the publication of the Chen Report containing geophysical information about the mineral estate that belonged exclusively to plaintiff, which publication damaged the commercial value of his coal lease. We agree that plaintiff has established a damaging of his property for which he is entitled to just compensation.

■ Colo. Const. art. II, § 15 provides that "[p]rivate property shall not be taken *or damaged*, for public or private use, without just compensation." To proceed on a claim of inverse condemnation, a plaintiff must show a taking of, or damage to,

property for a public purpose without just compensation by a government or public entity which has the power of eminent domain but has refused to exercise it. *The Mill v. State*, 787 P.2d 176 (Colo.App.1989), *rev'd on other grounds*, 809 P.2d 434 (Colo.1991).

■ To establish compensable damage, plaintiff must show that he has some right or interest pertaining to the property which has been wholly or partially destroyed and that the damage affects the property or some right or interest which he, as owner, enjoys in connection with the property which is not shared by the public generally. *Harrison v. Denver City Tramway Co.*, 54 Colo. 593, 131 P. 409 (1913).

■ Such "damage" includes that which would result from the making of an improvement constructed without condemnation proceedings, and inverse condemnation proceedings are appropriate if condemnation proceedings are or might be necessary or proper, but have not been initiated. *Board of County Commissioners v. Adler*, 69 Colo. 290, 194 P. 621 (1920); *see Kratzenstein v. Board of County Commissioners*, 674 P.2d 1009 (Colo.App.1983).

■ Thus, contrary to the City's assertion, physical ouster is not required in order for plaintiff to state a claim for relief in inverse condemnation proceedings. All plaintiff is required to show is a legal interference that substantially impairs his use or possession of the property, *Board of County Commissioners v. Flickinger*, 687 P.2d 975 (Colo.1984); *see Srb v. Board of County Commissioners*, 43 Colo.App. 14, 601 P.2d 1082 (1979), or that interferes with his power of disposition over his property. *Lipson v. Department of Highways, supra;* 2 P. Rohan & M. Reskin, *Nichols on Eminent Domain* § 6.20[1] (1990).

■ The facts here show that, in February 1978, the City drilled test holes on the mineral site without authorization from plaintiff or the State of Colorado. Further, the City's exploration and evaluation of the extent of coal deposits in this area were filed, as public information, in a report

later determined to be erroneous. Since the report concluded that there was no economically recoverable coal on the site, its publication impaired plaintiff's ability to deal advantageously with his mineral rights under the lease. And, since plaintiff possessed exclusive rights to conduct geophysical operations on the mineral estate, he was entitled to recover compensatory damages for the disregard of his property rights. *See Grynberg v. City of Northglenn, supra.*

In addition, there was testimony here that there could be no mining under the embankment of the reservoir and that mining under the reservoir itself would create additional safety hazards. Since a mineral estate is bound to support the surface estate, plaintiff was obligated to refrain from removing coal in a manner inconsistent with the support of the embankment or the surface estate. *See William E. Russell Coal Co. v. Board of County Commissioners*, 129 Colo. 330, 270 P.2d 772 (1954).

The issue of just compensation was, therefore, appropriately submitted to the jury for determination of the value of plaintiff's right to explore for and reduce to possession the minerals on his land. 2 P. Rohan & M. Reskin, *Nichols on Eminent Domain* § 5.26[3] (1990).

## II.

The City next contends that there was insufficient evidence to support the jury's verdict of $646,930. The City argues that, dependent as the verdict must be on the questionable testimony as to value given by a mining consultant, it must be set aside as improper and highly speculative. The City also contends that the verdict was tainted by improperly allowing the jury to consider evidence of the taking or damage to plaintiff's property, which is extraneous to the determination of just compensation. We disagree.

■ On review, if the jury was properly instructed, had the opportunity to observe the demeanor and credibility of the witnesses, and arrived at an award within the scope of the evidence, we will not reweigh the evidence, but will accept the jury's find-ings and award. *State Department of Highways v. Mahaffey*, 697 P.2d 773 (Colo. App.1984).

■ The jury heard several experts testify as to the value of the mineral estate in 1978. All agreed that the coal market was at its peak at that time. Plaintiff and another mining and engineering expert opined that the coal in this area averaged 9500 to 9700 BTU, that the bulk of the area was commercial and had six feet or more coal, and that analysis of the recoverability of resources prior to drilling for the Chen report indicated a presence of 4.4 million tons of coal, which made this area an excellent potential coal source in 1978. This expert also testified that the value of plaintiff's interest was negatively impacted because of the prohibition of mining under a reservoir embankment, safety concerns inherent in mining under a reservoir itself, and the publication of the erroneous Chen data. As such, he opined that plaintiff's mineral rights under the coal lease would no longer yield a willing buyer.

The mining consultant testified that 9700 BTU coal would yield $16.97/ton in 1977 and 1978. Given the presence of 4.4 million tons of coal, this expert's personal appraisal of the value of the exploration rights to plaintiff's property was $500,000 to $750,000. He opined that a willing buyer would have paid approximately $4.3 million for plaintiff's property prior to the taking and damage by the City.

Finally, plaintiff presented testimony from a "landman" experienced in negotiating the sale of coal rights in the Boulder/Weld coal field in 1977. He testified that the sale of a comparable property with 4.4 million tons coal at 8000 BTU sold, at that time, for $800,000.

■ Thus, plaintiff presented evidence as to the value of his coal reserves in 1977 and 1978 prior to the City's activities and showed what a willing purchaser would have paid for the property at the time it was damaged. This is a proper measure of damages. *See Department of Highways v. Shulhoff*, 167 Colo. 72, 445 P.2d 402 (1968); *Union Exploration Co. v. Moffat*

*Tunnel Improvement District,* 104 Colo. 109, 89 P.2d 257 (1939).

The City does not question the propriety of the jury instructions. Nor does it refute the fact that the jury was instructed independently to determine the credibility of each witness in weighing the testimony before it.

The jury heard evidence as to the City's actions and the contents of the relevant engineering reports, as this information pertained to the change in value of plaintiff's property rights under the coal lease. The record reveals that the trial court limited evidence of just compensation to exclude periods subsequent to the construction of the reservoir and the assignment by plaintiff of his lease. Thus, while the jury obviously heard testimony as to how the City came to damage plaintiff's property in the first place, the nature and effect of the damage was necessary to a determination of just compensation owing as a result of the damage. The jury's determination of compensation was, therefore, within the scope of the evidence properly before it. *See Department of Highways v. Mahaffey, supra.*

### III.

### A.

Finally, the City contends that attorney fees and prejudgment interest were erroneously awarded. The City argues that any attorney fee award is dependent upon the application of § 24–56–116, C.R.S. (1988 Repl.Vol. 10B), which allows attorney fees when the condemning authority has received federal funding. But, because the trial court found that federal funds were not awarded to the City until after the Chen report and plaintiff's assignment of the lease, it contends that the statute does not apply and plaintiff is not entitled to attorney fees as part of the judgment. The City also argues that since there was no order of immediate possession pursuant to § 38–1–105(6)(a), C.R.S. (1982 Repl.Vol. 16A), as required under § 38–1–116, C.R.S. (1990 Cum.Supp.), there is likewise no basis

for an award of prejudgment interest. We disagree.

■ We conclude that attorney fees were appropriately awarded to plaintiff under the plain language of the statute. Specifically, the statute provides that a plaintiff in an inverse condemnation proceeding shall be awarded attorney fees when the proceedings are instituted because of the "alleged taking of his property for any program or project for which federal financial assistance *will be* available to pay all or any part of the costs of the program or project...." Section 24–56–116 (emphasis added). Therefore, the fact that federal funding was not actually awarded to the City at the time of the actual damaging is not determinative of plaintiff's entitlement to attorney fees.

Further, the actions by Chen and other contractors in their investigation of plaintiff's property, as well as the actual construction of the reservoir, were part of the overall program or project for which federal financial assistance would become available. Plaintiff is, under these facts, entitled to attorney fees under the statute. *See Hayden v. Board of County Commissioners,* 41 Colo.App. 102, 580 P.2d 830 (1978).

The trial court likewise properly determined plaintiff's entitlement to an award of prejudgment interest. *See* § 38–1–116.

### B.

■ On cross-appeal, plaintiff argues that the trial court's denial of prejudgment interest from March 3, 1980, to the date of the change of venue to Weld County, on October 26, 1988, was arbitrary and erroneous, and the award should be calculated to include the entire period from the date of possession or interference by the City until the jury verdict on November 13, 1989. We disagree.

Although plaintiff's claims in inverse condemnation followed the appeal from summary judgment on plaintiff's initial claims in tort, the trial court was correct in concluding that § 38–1–116 precluded an award of prejudgment interest prior to the

date the inverse condemnation claim was transferred to its proper venue. Specifically, the delay during this time was the result of plaintiff's prosecution and appeal of claims other than inverse condemnation. And, plaintiff could not have obtained any just compensation prior to correctly bringing such action in the proper venue. *See* § 38–1–106, C.R.S. (1982 Repl.Vol. 16A); *State Department of Highways v. Ogden,* 638 P.2d 832 (Colo.App.1981).

Finally, the trial court did not abuse its discretion in finding that the majority of fees incurred by plaintiff prior to the October 26 transfer pertained to his pursuit of claims other than inverse condemnation. *See* § 24–56–116 (plaintiff is entitled to such attorney fees as, in the opinion of the court, will reimburse him for costs actually incurred because of the inverse condemnation proceedings).

Judgment affirmed.

STERNBERG, C.J., and MARQUEZ, J., concur.