### No. 9160.

### WASSENICH *v.* CITY AND COUNTY OF DENVER.

1. CONSTITUTIONAL LAW—*Taking Private Property for Public Use—Statute Construed.* The Act of 1911, c. 129, authorizing the condemnation of private lands by municipalities, sustained, save as to certain provisions.

2. EMINENT DOMAIN—*Condemnation—Procedure.* If for any reason the right of the municipality to avail of the statute is denied, the question should be settled in advance. All such questions are for the court.

The necessity for the taking, in the instant case, held to be wholly within the province of the municipality.

3. *Damages—Evidence,* of sales of other like properties, in the same vicinity, and used for the same purpose, is admissible.

The rule is the same even though the properties may present points of difference. No general rule can be laid down as to the degree of similarity. The question must of necessity rest largely in the discretion of the trial court.

A sale of property similar to that sought to be condemned, made three years prior to the trial, held not too remote in time.

4. *Jury—Examination of Other Lands.* The statute is to be construed strictly. The jury is not to view other lands than those of which condemnation is sought.

5. *Market Value.* Present market value means the market value at the time of the award. The land owner is not entitled to what may perhaps be obtained at a later date. Speculative and prospective values are not to be allowed.

The jury may consider the most advantageous use to which the premises may reasonably be applied.

Any reasonable use to which the land may be applied in the future may be considered but only as it may assist in arriving at the present value. No matter what the prospect may be the jury is to allow no more than the then market value.

Where the property is leased the award should be the value subject to the lease.

6. *Opinions as to Value,* may be given by witnesses qualified to speak to the matter. The witness must be shown to be familiar with the value of like property.

7. *Number of Expert Witnesses,* may be limited, in the discretion of the court.

8. *Verdict,* not corresponding with the testimony of any witness, is immaterial.

9. *Trial by Jury—Jury Fee,* cannot be exacted of a property owner who, in a proceeding to condemn his lands, demands a jury; nor can he be taxed with any of the costs of the trial.

10. *Waiver of Jury.* If the owner filing objections to the report of the commission, goes to trial before the court, he waives the right to a jury.

11. *Expert Witnesses—Fees.* Real estate agents testifying to the value of lands sought to be taken in a condemnation proceeding are not entitled to expert fees.

12. *Payment of Damages.* The property owner cannot be required to accept city warrants, no matter what may be their value. He is entitled to money.

13. *Parties.* Only the one having the record title need be made defendant in the first instant.

14. Costs—*Writ of Error*. The costs of a writ of error were taxed to the defendant in error, though the judgment below was reversed in part.

*Error to Denver District Court, Hon. John H. Denison, Judge.*

Mr. Carle Whitehead, Mr. Albert L. Vogl, Mr. Chester E. Smedley, for plaintiff in error.

Mr. James A. Marsh, Mr. Wm. R. Kennedy, for defendant in error.

Garrigues, C. J.

## Statement.

November 17, 1913, the city of Denver passed an ordinance authorizing and providing for the opening, widening, extending and establishing of a public thoroughfare known as South Santa Fe Drive, a public street and boulevard of the city, and March 21, 1914, filed a petition in the District Court under chapter 129, S. L. 1911, page 373, to condemn parcels of land for this purpose. Parcel No. 1 belonged to Albert G. Wassenich, plaintiff in error, and parcel No. 3 was a leasehold interest in the land, and before judgment was entered, belonged to the Cleanheat Fuel Company.

Section 1 of the act provides, whenever the city council shall pass an ordinance to establish, erect, extend, open, widen or alter any street or boulevard, the city shall have the power to take, damage, condemn, or appropriate, by the right of eminent domain, such private property as may be required for the improvement.

Section 2 provides, that the petition shall state the general nature of the proposed improvement, a correct description of the property to be taken, the name of the owner as shown by the county records, and shall pray for the appointment of three commissioners to award the damages.

Section 3 provides that the owners of all property sought to be condemned shall be made defendants, but that it shall

not be necessary to make a person defendant unless he have some title appearing of record.

Section 4 provides, that the court or judge shall fix a date for hearing the petition of which the defendant must be notified by summons.

Section 5 provides, that any time prior to the hearing, the defendant may set forth by answer any legal objections to the proceeding, which shall be heard by the court. The court cannot inquire into the necessity for exercising the right, nor into the necessity for making the improvement, nor into the necessity for taking the particular property. If the objections are overruled, and the court finds that petitioner has the right to prosecute the proceeding, it shall appoint three commissioners.

Section 6 provides, that the commissioners may hold meetings, compel the attendance of witnesses, and hear such proofs as shall be presented to them.

Section 7 provides that the commissioners shall estimate, fix and determine the fair and actual cash market value of the property taken, and the fair, direct and actual damages to the remaining property, not taken, caused on account of the improvement.

Section 11 provides, that after the commissioners file their report with the clerk, the court shall fix a time for its consideration, of which the defendant shall have written notice in like manner as a summons in civil actions.

Section 12 provides, that any person, having any interest in the property, may appear at the time fixed for the hearing and file written objections to the report, and default shall be entered and the report confirmed against those not objecting or asking for a jury. Where objections are filed, the trial shall be to the court without a jury, and it shall find the proper award or assessment on the facts, and enter judgment accordingly.

Section 13 provides, that, at or before the hearing, any owner dissatisfied with the commissioners' report may ask for a jury trial, provided he deposit a jury fee for one day's service. The jury are required to return a special

verdict fixing the damages of each defendant, severally, who demanded a jury. The verdict shall include the fair, actual cash market value of the land taken, and also the direct, fair and actual damages caused on account of the improvement to property not taken. Upon request the court shall order the jury to go upon the premises sought to be taken or damaged, and examine them in person.

Section 14 provides, that the cost up to and including the filing of the commissioners' report shall be paid by the city, all costs after that shall be paid by the losing party.

Section 16 provides, that the court shall grant petitioner the right to enter upon the property upon payment of the compensation. Unless payment is otherwise provided by the decree, the city council shall, within 90 days thereafter, make, by ordinance, the necessary appropriation for the payment of the compensation, and a proper city warrant shall thereupon be issued to the party entitled thereto.

Section 18 provides, that, if the ownership of any property taken be in controversy, the award shall be paid into court for the use of the successful claimant, and all disputes over the ownership of the property shall be tried by the court.

Section 19 provides, that, as soon as the amount of the award has been tendered to the owner, or a city warrant for the amount deposited in the court for his use, the city may take possession.

Section 20 provides, if the owner shall prosecute a writ of error, the city may pay the award into court or deposit a city warrant therefor for the owner's use, and shall thereupon be entitled to take possession.

Defendant Wassenich, by answer, attacked the jurisdiction of the court, the sufficiency of the complaint, the constitutionality of the act, the legality of the proceeding, the necessity for the taking, and showed the court that the American Fuel Company, as lessee, was a necessary party. It was made a party, the answer was overruled, and commissioners appointed. December 17, 1914, the commissioners filed their report finding the value of the land taken

to be $3,000, and $2,000 as damages to the residue, and that the leasehold interest of the American Fuel Company, called parcel No. 3, would be damaged $1,000 on account of the improvement.   No objections were filed to the report.   Wassenich, however, asked for a jury trial, and default was entered against the American Fuel Company. October 23, 1915, the jury returned a verdict finding the fair, actual cash market value of the land taken was $1,850, and the fair, direct and actual damages to the remainder not taken was $1650.   December 16, 1915, motion for a new trial was overruled.   It appears from the record that Wassenich leased the property originally to the Mitchell Coal Company, with the privilege of assignment, for a term extending from February 1, 1910, to February 1, 1930, for the purpose of operating a coal yard thereon, the tenant to put in scales, erect suitable buildings, coal bins, etc., and lay down a spur track, which were to remain the property of the lessee with power of removal at the end of the lease.   October 27, 1911, the Mitchell Coal Company assigned the lease to the American Fuel Company, and March 8, 1915, it assigned the lease and its interest in the award to the Cleanheat Fuel Company.   February 3, 1916, an order was entered upon stipulation, substituting the latter as a party in the place of the American Fuel Company, and it was given time to file objections to the report, which it did, based principally upon the ground that the award of $1,000 was insufficient to cover the damages to the leasehold interest.   On the same day Wassenich filed a motion for leave to file objections to the commissioners' report, to set aside their report, to vacate the verdict of the jury, and for a new trial, and asked that a single award of compensation be made, and that the court thereafter determine the relative rights of himself and the tenant.   May 29, 1916, this motion was heard and denied, and the case pending for trial before the court on the objections of the Cleanheat Fuel Company was set for trial July 13, 1916. But before trial, it was stipulated on compromise between the city and the company that the court, in its decree,

should amend the commissioners' report and award the Cleanheat Fuel Company the sum of $1,500 in payment of its damages. The court entered an order allowing petitioner's witnesses the sum of $50.00 each as experts on value, and entered judgment on the verdict, modifying and changing the commissioners' report to make it conform to the verdict of the jury, that is, finding the value of the land taken to be $1,850, which the court substituted for the $3,000 found by the commission, and the damages to the remainder to be $1,650, which it substituted for the $2,000 damages found by the commission, and entered judgment against Wassenich, as the losing party, for the costs of the jury trial. And also found the Cleanheat Fuel Company had succeeded to all the rights of the American Fuel Company and allowed $1,500 as the proper damages to the leasehold interest, and ordered that this sum be substituted in lieu of the $1,000 damages awarded the American Fuel Company, and entered a decree giving the city possession, upon depositing with the clerk of the court city warrants for the amount, payable to the clerk for the use of the proper parties, and taxing all the costs to the city except the costs assessed against Wassenich. Motions for new trial was overruled, and Wassenich brings the case here on error.

Garrigues, C. J., after stating the case as above:

1.  Objections to the procedure:

The constitutionality of the act has been upheld by us in the following cases:

15th Street Investment Co. v. Denver, 59 Colo. 189, 147 Pac. 677; Rifken v. Arnold, 59 Colo. 212, 147 Pac. 681.

The statute gives the city the right to condemn upon the passage of the ordinance. The ordinance was duly passed, and it and the petition contain all the required essentials. The court properly overruled all the objections raised by the answer. Questions intended to defeat the proceeding must be raised in advance and be determined by the court in limine. If, for any reason of law or fact, a petitioner

is not entitled to condemn the tract, or it should not be taken for the improvement, such matters are for the court, and of course should be settled in advance, and do not, strictly speaking, belong to the question of necessity.

*U. P. R. R. Co. v. Colo. P. T. C. Co.*, 30 Colo. 133, 138, 69 Pac. 564, 97 Am. St. 106; *Lavelle v. Julesburg*, 49 Colo. 290, 112 Pac. 774.

The statute provides that the court shall have no power to inquire into the necessity for exercising the right, nor the necessity for making the improvement, nor into the necessity for taking the particular property. This right is all given by statute to the city. The legislature determined the necessity for exercising the right, and we have determined that condemnation for a street is a proper use of the power. The necessity for the taking in this case lay wholly within the province of the municipality.

*Kirkwood v. School District*, 45 Colo. 369, 101 Pac. 343; *Lavelle v. Town of Julesburg*, 49 Colo. 290, 112 Pac. 774; *Warner v. Town of Gunnison*, 2 Colo. App. 431, 31 Pac. 238.

2. Evidence of sales of other tracts:

After objections to the legality of the proceeding were overruled, the only question before the jury was that of ascertaining the amount of compensation to be paid for the land taken, and damages to the residue. Error is assigned because the court admitted evidence of actual sales of other tracts, upon the ground that they were not sufficiently similar, and the sales were too remote in time. The attack is under two heads; first, that such evidence is not admissible, and second, because the properties were not similar, and the sales too remote. We are committed to the doctrine that this kind or character of evidence is admissible. In *Loloff v. Sterling*, 31 Colo. 102, 106, 71 Pac. 1113, it is said regarding such evidence: "Without entering into a discussion of the question, we think the decided weight of authority, as well as reason, is in favor of its admissibility." That the admissibility of such evidence is sustained by the great weight of authority see Lewis on Eminent Domain, 3d Ed. sec 662.

As to the second point, all the tracts were situated in the same general section and locality of the city and were not more than a quarter of a mile apart, they were the same kind of property, and all had the same general features and characteristics. They were trackage properties and valuable principally for trackage use, and actually used for that purpose. The section of the city they were in placed them in a general class by themselves, easily distinguishable from up-town business property, or from the ordinary resident portions of the city. True, each tract possessed many differences just as things that are similar may differ in many respects. But that does not make the evidence inadmissible. It being the same kind of property, valuable principally for the same use, possessing the same general features, situated in the same general locality of the city, and used for the same purpose, we do not think it was an abuse of discretion for the court to admit the evidence. All business property in a general section, or all residence property in a general locality is similar in the sense in which the word is here used, though each parcel may possess many points of difference. Similarity does not mean identical, but having a resemblance. No general rule can be laid down regarding the degree of similarity that must exist to make such evidence admissible. It must necessarily vary with the circumstances of each particular case. Whether the properties are sufficiently similar to have some bearing on the value under consideration, and to be of any aid to the jury, must necessarily rest largely in the sound discretion of the trial court, which will not be interfered with unless abused. The court must determine the question before admiting the evidence, and after it is admitted, the opposite party may show to the jury that the circumstances are such as to render it of little or no value. In determining the weight of such evidence, the jury may consider the time of the sale, the amount of land, and any and all differences, facts or circumstances affecting the value of such evidence. The court did not err in holding that the sales of the two parcels were sufficiently similar

to make the evidence admissible. One of the sales was about three years prior to the trial, which, it is contended, is too remote. Considering the use, character and location of the properties, we do not think the sales were too remote in time to make it an abuse of discretion to admit the evidence. The points here involved are quite thoroughly discussed in the section mentioned in Lewis on Eminent Domain.

3. Examination by jury of other tracts than the property taken:

Error is assigned because the court refused the request of defendant that the jury, while examining the land taken, be permitted to examine the tracts concerning which certain witnesses had testified. This ruling of the court was not error. The statute provides for an examination by the jury of the premises sought to be taken or condemned, but makes no provision for the examination of other premises. Proceedings in eminent domain are *sui generis* and not governed by the code but by the statute authorizing the examination, which must be strictly construed.

*Tripp v. Overocker*, 7 Colo. 72, 1 Pac. 695; *Knoth v. Barclay*, 8 Colo. 300, 6 Pac. 924; *D. & N. O. R. R. Co. v. Lamborn*, 8 Colo. 380, 8 Pac. 582; *D. & R. G. R. R. Co. v. Griffith*, 17 Colo. 598, 600, 31 Pac. 171; *C. F. & I. Co. v. Four Mile Ry. Co.*, 29 Colo. 101, 66 Pac. 902; *Sugar City v. Commissioners*, 57 Colo. 432, 437, 140 Pac. 809; *Tedens v. Sanitary Dist. of Chicago*, 149 Ill. 87, 56 N. E. 1033.

In the *C. F. & I. case*, 29 Colo., page 101, it is said: "Proceedings in eminent domain are special, and the requirements of the statute on the subject must be strictly complied with." In the *Tedens* case, 149 Ill. 87, it is held that the statute contains no provision authorizing the jury to view other premises than the land condemned and that they have no authority to do so.

4. Present market value means the market value at the time of the award:

Complaint is made because the court instructed the jury that it is the present market value at the time of the trial

that is to be determined and allowed. The statute provides for a special verdict which shall contain the fair, actual cash market value of the land taken, and the direct, fair and actual damages caused by the improvement to the remainder of the property not taken. Defendant contends he was entitled to the highest value that he might be able to obtain in the future by waiting for a better market caused by a demand for such property, or waiting for a customer who would pay on the basis of the most advantageous use to which it could be put, reasonably. This is not the law. The jury are to determine and allow the present fair, cash market value at the time of the trial, and are not to allow for any speculative or prospective values. In determining the present cash value the most advantageous use to which the property may reasonably be applied may be considered. Any reasonable future use to which the land may be adapted or applied by men of ordinary prudence and judgment may be considered in so far only as it may assist the jury in arriving at the present market value. The owner is entitled to have considered the most advantageous use in the future to which the land may be reasonably applied, not with the view of allowing him for speculative or prospective damages or values, but only as such evidence may bear upon or affect or assist in arriving at the present market value. It is the duty of the jury to find and allow no more than the present market value, no matter what the future prospects may be, and this character of evidence may be considered only for the purpose of ascertaining the market value at the time of the trial. After considering any and all reasonable uses to which the property may be put in the future, the question is, taking all things into consideration, what is the present market value, not what will or may be its value later on account of some use to which it may be put in the future. Market value ordinarily means what price property would bring if sold in the open market under ordinary and usual circumstances, for cash, assuming that the owner is willing to sell and the purchaser willing to

buy, but neither under any obligation to do so. So the question for the jury to answer was, considering its reasonable availability for all valuable uses, or the most advantageous use, how much would the property bring in cash if offered now for sale by one who desired but was not obliged to sell, and was bought by one who was willing but not obliged to buy. As to the residue, the question was, how much is the present fair cash market value of the remainder of the land, not taken, decreased or diminished in value by reason of the improvement. The court fully instructed upon these matters, and we find no errors in this particular.

5. Expert or opinion evidence upon market value:

Market value of property taken in a condemnation proceeding is necessarily a matter of opinion. To aid and assist the jury in arriving at an opinion, witnesses who are qualified may give their opinions as to the value and any special circumstances upon which those opinions are based. But, after all, the verdict is but the opinion of the jury as men, derived from their own general knowledge, the opinions of others and an inspection of the premises. Of course one who is incompetent cannot express an opinion. Before one, other than the owner, can give an opinion as to the value of property, it must be shown that he is familiar with the value of such property. There was no error in this regard.

6. Limiting the number of witnesses:

Complaint is made because the court limited the number of expert witnesses on value to four on a side. We think this matter lay within the discretion of the court, which was not abused in this case.

7. The verdict and the evidence:

The fact that the verdict in a condemnation suit does not correspond with the evidence of any of the witnesses on value is immaterial.

8. Costs of the jury trial:

The court required defendant, to be entitled to a jury trial, to deposit a jury fee for one day's service, and taxed

all the costs after the filing of the commissioners' report to respondent, upon the ground that he was the losing party because the verdict of the jury was less than the award of the commissioners. In this the court was in error. No jury fee could be demanded of respondent as a condition precedent to his constitutional right to a jury trial, neither could he be taxed with any of the reasonable costs of such trial. Sec. 15, Art. 2 of the bill of rights provides, that the compensation shall be ascertained by a jury when required by the owner. The constitution guarantees the owner a jury trial for ascertaining the value of the land taken and the damages to the residue, and if any part of such costs are taxed to him, his just compensation will be reduced equal to the amount he has to pay out for a jury, and amounts to depriving him to that extent of the guaranteed just compensation. This constitutional question seems to have been decided by us in the following cases:

*Dolores No. 2 L. & C. Co. v. Hartman,* 17 Colo. 138, 140, 29 Pac. 378; *Southwestern L. Co. v. Hickory Jackson D. Co.,* 18 Colo. 489, 33 Pac. 275; *Keller v. Miller,* 63 Colo. 304, 165 Pac. 774, 777.

The statute provides for the appointment of three commissioners to ascertain the compensation and damages, and when they file their report, the court must fix a time for considering it, of which defendant shall be served with written notice like a summons in civil actions. On the return day the owner may elect either to accept the preliminary award of the commissioners, or file objections to their report, or ask for a jury trial. If he does neither, default and judgment is entered against him in favor of petitioner confirming the report. If he files objections, there is then a trial of the facts before the court without a jury which hears all the evidence of both sides and decides the case on the facts and the merits, and enters the proper judgment. If the owner files objections to the report, and goes to trial before the court, he waives a jury trial. Wassenich filed no objections, and asked for a jury.

The proceeding before the commissioners seems to be pre-
liminary and *ex parte,* but regarding this we express no
opinion. Whether this be true or not, defendant waived no
right to a jury trial, and demanded a jury at the first op-
portunity, and he cannot be penalized into paying the cost
of the jury because they returned a less award than the
commissioners. When a defendant in a condemnation suit
does nothing to waive a jury trial, and within time asks
for a jury, he cannot, under our constitution, he required
to pay such expenses as are usually taxed as costs in a
jury case, though if he prosecutes a writ of error after
the jury trial, he may be required by statute to pay the
costs of the review as in other cases.

9.   Elements of damages considered by the jury:

Complaint is made that the court did not make clear to
the jury the elements of damages they should consider in
arriving at a verdict. Sections 7 and 13 make it clear that
the issue to be determined is the fair, actual cash market
value of the land taken at the time of the award and the
direct, fair and actual damages to the remainder of the
tract, not taken, caused by the improvement, equal to the
diminution in the market value of the residue at the time
of the trial, for any use to which it may be put, reasonably.
The instructions in this regard are ample and in harmony
with the statute.

10.   Expert witness fees:

The court allowed petitioner's witnesses who testified
and gave opinions as to the value of the land expert wit-
ness fees. In this the court was in error. Merely be-
cause a witness qualifies and testifies to the market value
of property in a condemnation suit does not make him an
expert in the sense in which the word is here used, en-
titling him to expert witness fees. Expert evidence is the
product of the brain. It means one who is an authoritative
specialist, possessing special learning, skill or knowledge
in a particular subject, as an art or science, like mineralogy
or toxicology as an illustration. Real estate agents testi-
fying to the value of property come far from coming within

this class of witnesses, entitled to expert witness fees.

11.  Payment in city warrants:

The decree provides that, upon the city depositing a city warrant with the clerk of the court, payable to the clerk, for the use of the party entitled thereto, it should have possession of the premises.  The deposit must be in cash. Defendant could not be compelled to accept a city warrant in lieu of cash, though it might have been just as good.  It is the principle involved.  Cases might arise sometime somewhere in which some city warrants would not be the same as cash, and a good deal of trouble might be experienced in converting them into immediate cash.

12.  Separate awards to the owner and the tenant:

The statute provides that the petition shall state the name of the owner as shown by the county records.  The lease was not recorded, and the record title being in Wassenich relieved the city originally from making anyone else a party.  *Hutchison v. McLaughlin,* 15 Colo. 492, 497, 25 Pac. 317; 11 L. R. A. 287.  Defendant by answer, showed that the land was in the possession of a tenant, under a twenty year lease, whom he asked the court to make a party.  Thereupon the American Fuel Company, as lessee, was made a party defendant.  After it was made a party, the leasehold interest was called parcel No. 3, and the commissioners made a separate award of $1,000 to it as damages to the market value of its leasehold interest.  It filed no objections to this, and did not ask for a jury.  The landlord filed no objections, and asked for a jury.  The ownership of the property was not in controversy.  The issue on the jury trial was necessarily limited to Wassenich's estate or interest in the land.  The jury, in his case, returned a verdict finding the value of the land taken, and the damages.  It was shown during the proceeding that the American Fuel Company had theretofore assigned the lease to the Cleanheat Fuel Company which was then operating a coal yard upon the premises, and it was made a party in place of the American Fuel Company.  It came in voluntarily and with permission of court filed objec-

tions to the commissioners' report awarding $1,000 as damages to the leasehold interest upon the ground that the amount was insufficient, and asked for a trial of this issue before the court. Thereupon, on the day set for its trial before the court, a compromise was entered into between it and the city by which the city agreed to pay it $1,500 instead of $1,000 as damages to the leasehold interest, and that judgment should be entered accordingly, which was done, and the American Fuel Company made and make no complaint either to the substitution of parties or the amount of the award. After final judgment, defendant Wassenich moved for a new trial, and asked that a single award for the whole amount of compensation and damages be made and paid into court, and that the court determine the relative rights of himself and his tenant in a single award, which motion was overruled, and upon which error is assigned. In *Denver P. I. Co. v. The D. & R. G. R. R. Co.,* 30 Colo. 204, 215, it is held, where several persons claim the same property, and a dispute exists between them as to which one is the owner of the premises and entitled to the award, the petitioner should pay it into court, where their rights can be adjudicated among themselves. But that is not this case, there is no controversy here over the ownership of the property; defendant, by answer, pleaded the tenancy and had the tenant made a party and put the lease in evidence. The lessee compromised his end of the controversy and settled it by accepting the award. The landlord asked for a jury to determine the amount of his compensation and damages. The court told the jury that the value which they must give him for his property taken was its value, subject to the lease, and that his damages to the remaining property must also be considered with respect to its value, subject to the lease. We think the law was correctly stated in the instruction.

The costs here will be taxed to petitioner, defendant in error. The case will be remanded with directions to the lower court to allow no expert witness fees, to require the award to be paid in cash, to refund to plaintiff in error the

money he advanced as a jury fee, and to tax the costs in the lower court to the city; otherwise, the judgment of the lower court will not be interfered with.

Mr. Justice Teller and Mr. Justice Burke concur.

Decided November 3, 1919.    Rehearing denied January 5, 1920.