## No. 12,573.

PINE MARTIN MINING COMPANY *v.* EMPIRE ZINC COMPANY.

(11 P. [2d] 221)

Decided April 18, 1932.

Mr. C. H. PIERCE, for plaintiff in error.

Mr. EDWARD C. STIMSON, Mr. PAGE M. BRERETON, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE Pine Martin Mining Company sued out this writ to review a judgment of the district court dismissing a condemnation proceeding instituted by the company.

The mining company is a corporation. Among its objects, as stated in its certificate of incorporation, are these: To acquire and operate mines; to acquire mill sites; to acquire ditches, flumes and aqueducts for the carrying of water; to build a power plant to utilize water power rights; to operate a mill to concentrate its own

ores and the ores of others; to acquire by purchase or condemnation a ditch or flume; and from time to time to sell or otherwise dispose of its mines, mills, water rights and its other property.

In 1915 the company acquired a group of mining claims in Eagle county. It located and obtained a patent for a mill site in the same locality. Cress, one of the owners of the Brooklyn placer mining claim, over which a right of way is sought, surveyed the mill site for the mining company. In 1916 and 1917 the company erected on its mill site a concentrating mill. At the same time it made a water right filing, built a diversion dam in Eagle river, and constructed a pipe line to carry water from the river to the mill for power purposes in operating the mill. The pipe line crossed the Brooklyn placer mining claim, then owned by Coursen and Cress. A railroad spur was built from the main track to the mill to carry ore to the mill and to transport concentrates from the mill. The initial cost of these improvements was $45,600. Before constructing the mill and pipe line the company bought from the owners two acres of the placer claim. The president of the company testified that, at that time and as part of the same transaction, it was understood that the company should have a right of way for a water line across the rest of the placer. Before the work was completed Coursen informed the president that he did not want the pipe line to go through his property and threatened an injunction. Thereupon, on May 5, 1917, the company commenced a proceeding to condemn, for a right of way for its pipe line, a strip of ground 50 feet wide, containing a trifle over one acre. On May 21 the court made an order giving the company temporary possession of the premises sought to be condemned. Purusant to such order, the company deposited $150 with the registry of the court, and thereupon continued the construction of the mill and the pipe line, completing the same in the summer of 1917. On October 15 Coursen and Cress filed an answer. On June 6, 1918, the Empire Zinc Company ob-

tained title to the placer claim. On November 16, 1927, it was substituted as respondent in the place of Coursen and Cress, and, upon stipulation of the parties, filed its answer, which was substituted for the answer of Coursen and Cress. The answer raised the question of the right to condemn. After a replication was filed, the zinc company moved to set for hearing the issue whether at the time of such hearing the mining company had the right to condemn. The issue was tried on June 21, 1928; the court found "that the right of petitioner to condemn and take said land does not exist, and that there is no necessity for such taking"; and thereupon the court dismissed the proceeding.

1. Counsel for the mining company insists that the court had no right to try the issue of the right to condemn, as the application for such hearing was not made in apt time. The application, having been made before the calling of a jury to assess damages, was in apt time. *Kaschke v. Camfield*, 46 Colo. 60, 102 Pac. 1061; *Wassenich v. City & County of Denver*, 67 Colo. 456, 186 Pac. 533.

2. It is not seriously contended that at the time of the commencement of the proceeding (May 5, 1917) the mining company did not have the right to condemn. Counsel for the mining company contends that the case should have been decided upon the facts as they existed at that time, and not, as the trial court held, upon the facts as they existed over eleven years thereafter, when the case was heard. But for some purposes the facts as they exist at the time of the hearing may be considered. Thus, section 6327, C. L., provides that in estimating the value of the property actually taken, the value at the time of the appraisement shall be awarded. That rule was applied in *Colorado Central R. Co. v. Allen*, 13 Colo. 229, 22 Pac. 605; *Colorado Midland Ry. Co. v. Brown*, 15 Colo. 193, 25 Pac. 87; *Twin Lakes Hydraulic G. M. Syndicate v. Colorado Midland Ry. Co.*, 16 Colo. 1, 27 Pac. 258; *Lamborn v. Bell*, 18 Colo. 346, 32 Pac. 989; *Lavelle v.*

*Town of Julesburg*, 49 Colo. 290, 112 Pac. 774; *Wassenich v. City & County of Denver, supra.* The long delay in bringing the present case on for a hearing is chargeable equally to both parties: If during that delay conditions had so changed that at the time of the hearing the mining company would have had no right to condemn had it commenced the proceeding at that time, it would have been unjust, and would have defeated the purpose of the Eminent Domain Act, for the court to award the relief to which the company had ceased to be entitled. It was proper for the court to consider the situation as it was at the time of the hearing.

3. Counsel for the zinc company admit that when that company acquired title to the placer the mill was in operation and the pipe line in use, and the condemnation suit seemed to be in compliance with the law and in good faith; but they contend that later developments showed that the enterprise was not feasible and was a failure, that at the time of the hearing the right of way was not used for the purposes stated in the petition, or at all, and was not needed, and, therefore, that the necessity and the right to condemn had ceased.

The evidence upon which this contention is based indicates that at the time of the hearing the enterprise had a history not unfamiliar to those acquainted with the business of metal mining and milling. At first the company operated on its own account; then leased from time to time to various sets of lessees. At times the mill was in operation; most of the time it was idle. In 1919 lessees spent $1,000 in repairing the pipe line, and in 1925 the mill was put in good condition at an additional expense of $1,000. In 1926, the spur track was disconnected from the main track, but the railroad engineer testified that upon resumption of mill operations it would be reconnected. At the time of the hearing (1928) the mill and pipe line had fallen into disrepair; one witness said that the mill was dilapidated. It is evident that up to the time of the hearing the enterprise was not a success. How-

534

ever, at that time there were pending negotiations with another company for the installation in the mill of a roaster and cyanide plant, which negotiations were at a standstill, awaiting the result of the condemnation proceeding.

■■ The statute provides that the court or judge shall hear proofs and allegations touching the regularity of the proceeding. C. L., §6316. Questions intended to defeat the proceeding must be raised in advance and be determined by the court in limine. If, for any reason of law or fact, a petitioner is not entitled to condemn a tract, or if it should not be taken, such matters are for the court to settle in advance and do not, strictly speaking, belong to the question of necessity. *Wassenich v. City & County of Denver, supra.* Thus, whether or not the petitioner belongs to the class of persons entitled to condemn; whether or not the property sought to be taken belongs to the class of property that is subject to condemnation; whether or not the purpose for which the property is sought to be taken is one for which condemnation is permitted; whether or not the petitioner and the owner have been able to come to an agreement concerning a purchase of the land; and whether or not the act authorizing the proceeding is constitutional; these and similar questions, when raised, are for the court to determine in limine. However, the question of the necessity for taking the land is not for the court to determine, but, when a proper subject of inquiry, must be determined by a board of commissioners appointed by the court. C. L. §6316; *Kaschke v. Camfield, supra; Kern v. Minekime,* 45 Colo. 378, 101 Pac. 341. And in such case it is the court's duty to appoint commissioners for the purpose, even though the respondent, in demanding a determination of the question of necessity for taking, does not request or suggest the appointment of commissioners. *Kern v. Minekime, supra.*

In finding that there was no necessity for the taking

of the property, the court went beyond its province and thereby committed error.

The record does not support the finding that the mining company's right to condemn ·did not exist, and in so finding the court erred, unless, indeed, counsel are correct in their contention that in the present case a decree condemning the land would violate the due process clause of the Fourteenth Amendment; a contention that we will now discuss.

4. Counsel for the zinc company commence their argument on the constitutional question with the following quotation from the opinion in *Madisonville Traction Co. v. Saint Bernard Mining Co.*, 196 U. S. 239, 251, 25 Sup. Ct. 251: "It is fundamental in American jurisprudence that private property cannot be taken by the government, national or state, except for purposes which are of a public character, although such taking be accompanied by compensation to the owner. That principle, this court has said, grows out of the essential nature of all free governments. * * * Any state enactment in violation of these principles is inconsistent with the due process of law prescribed by the Fourteenth Amendment." But in a later case, *Clark v. Nash*, 198 U. S. 361, 25 Sup. Ct. 676, where it was contended that the proposed use of a ditch to convey water to the land of the petitioner alone was not a public use, and, therefore, that the petitioner had no constitutional right to condemn land for that purpose, even where a statute permitted it, the court upheld the statute. The objection was disposed of in these words: "In some states, probably in most of them, the proposition contended for by the plaintiffs in error would be sound. But whether a statute of a state permitting condemnation by an individual for the purpose of obtaining water for his land or for mining should be held to be a condemnation for a public use, and, therefore, a valid enactment, may depend upon a number of considerations relating to the situation of the state and its possibilities for land cultivation, or the successful prosecu-

tion of its mining or other industries. Where the use is asserted to be public, and the right of the individual to condemn land for the purpose of exercising such use is founded upon or is the result of some peculiar condition of the soil or climate, or other peculiarity of the state, where the right of condemnation is asserted under a state statute, we are always, where it can fairly be done, strongly inclined to hold with the state courts, when they uphold a state statute providing for such condemnation. The validity of such statutes may sometimes depend upon many different facts, the existence of which would make a public use, even by an individual, where, in the absence of such facts, the use would clearly be private. Those facts must be general, notorious and acknowledged in the state, and the state courts may be assumed to be exceptionally familiar with them. They are not the subject of judicial investigation as to their existence, but the local courts know and appreciate them. They understand the situation which led to the demand for the enactment of the statute, and they also appreciate the results upon the growth and prosperity of the state, which in all probability would flow from a denial of its validity. These are matters which might properly be held to have a material bearing upon the question whether the individual use proposed might not in fact be a public one." And see *Strickley v. Highland Boy Mining Co.*, 200 U. S. 527, 26 Sup. Ct. 301. Considerations such as those suggested in the opinion in the Clark-Nash case prompted the people of this state to incorporate into the Constitution the following provisions: Article XVI, section 7: "All persons and corporations shall have the right of way across public, private and corporate lands for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation." Article II, section 14: "That private property shall not be taken for private use unless by consent

of the owner, except for private ways of necessity, and except for reservoirs, drains, flumes or ditches on or across the lands of others, for agricultural, mining, milling, domestic or sanitary purposes." And see C. L., §§6311, 6362, for statutory provisions. The provisions quoted above cover pipe lines. *Town of Lyons v. City of Longmont,* 54 Colo. 112, 129 Pac. 198. They also cover the milling of ore.

 Where practicable, state constitutions and statutes should be so construed as to avoid conflict with the federal Constitution. We believe that the constitutional provisions quoted above, and the statutory provisions, are not, when reasonably construed, in conflict with the Fourteenth Amendment to the federal Constitution. Although the words "private use" occur in our Constitution and statutes, it is obvious that they do not mean a *strictly* private use, that is to say one having no relation to the public interest. The fact that the Constitution permits private property to be taken for certain specified uses is an implied declaration that such uses are so closely connected with the public interest as to be at least quasi public, or, in a modified sense, affected with a public interest; and from our acquaintance with the history of this state and of the conditions existing here, we know that such implied declaration is in harmony with the general, notorious and acknowledged facts. Though we have not heretofore said so in so many words, the foregoing considerations prompted our repeated decisions to the effect that under our Constitution and statutes private persons have the right to take private property for the uses specified in the Constitution. *Kaschke v. Camfield, supra; Lamborn v. Bell,* 18 Colo. 346, 32 Pac. 989; *Gibson v. Cann,* 28 Colo. 499, 66 Pac. 879; *Ortiz v. Hansen,* 35 Colo. 100, 83 Pac. 964.

It is not necessary for us to consider what the effect would be if the state Constitution or a statute should attempt to confer the right of condemnation for a *strictly* private use, for this is not such a case.

538

■ 5. Counsel for the zinc company say, and correctly, that the question whether the right to condemn exists should be determined as of the date of the hearing. They say that at that time the mining company was not engaged in operating the mill on its own account; that for some time prior thereto it had not been so engaged; that it showed no intention to operate the mill in the future on its own account, but only through lessees; and that the enterprise was not feasible or practicable; and they contend, therefore, that it does not clearly appear that the intended use would be affected with a public interest, or would be sufficiently connected with the public interest as to justify a taking of the property, and that such taking would be a deprivation of the zinc company's rights under the Fourteenth Amendment. This contention is commingled, to some extent, with the contention that there was no necessity for condemning the property; but, as we have seen, the question of necessity is not for the court, but for commissioners.

■ The fact that the property had been leased from time to time, and may again be leased, does not deprive the mining company of the right to condemn. In *Union Pacific Railroad Co. v. Colorado Postal Telegraph-Cable Co.*, 30 Colo. 133, 69 Pac. 564, a telegraph company was incorporated for the declared purpose of selling its lines to a foreign corporation. We held that that circumstance did not affect the telegraph company's right to condemn. We said that "One of the essential attributes of property is the right to sell." The same is true of the right to lease.

■ Whether or not an enterprise is feasible or practicable, and whether or not it will be a financial success, cannot be inquired into even by commissioners charged with the duty of determining the question of necessity. *Gibson v. Cann, supra; Haver v. Matonock*, 75 Colo. 301, 225 Pac. 834; *Schneider v. Schneider*, 36 Colo. 518, 86 Pac. 347. And clearly such questions are not for the determination of the court in limine. In *Colorado & Utah*

*Coal Co. v. Walter,* 75 Colo. 489, 226 Pac. 864, we said that a respondent in a proceeding to condemn a right of way for a pipe line cannot contest the feasibility of the enterprise or the petitioner's right to take the water of a spring.

██ The contention that a condemnation in this case would be a violation of the Fourteenth Amendment cannot be sustained.

For the reasons stated, the court erred in dismissing the proceeding. The judgment is reversed, and the cause is remanded for further proceedings in harmony with the views herein expressed.