## No. 16,491.

ROTHWELL ET AL. *v.* COFFIN, DISTRICT JUDGE.
(220 P. [2d] 1063)

Decided June 26, 1950.   Rehearing denied July 24, 1950.

Messrs. ALLEN & LYNCH, for complainant Rothwell.

Messrs. APPLE & WEST, for complainant McIntyre.

Mr. GEORGE A. EPPERSON, Mr. ROBERT G. SMITH, for respondent.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THIS is an original proceeding instituted in this court by Charles W. Rothwell and J. F. McIntyre, to whom we hereinafter refer as complainants, who filed their complaint seeking an order in the nature of certiorari, pursuant to Rule 106 (a), (2), (4). A rule to show cause was duly issued.

Claude C. Coffin, as Judge of the district court within and for the County of Weld, is named respondent, and complainants seek an order of this court requiring him to appoint a board of commissioners for the purpose of determining the necessity of taking the lands of complainants in condemnation proceedings pending in the district court of Weld county, under the provisions of section 6, chapter 61, '35 C.S.A.

There is no dispute concerning the facts involved in this controversy. The complainants were defendants in condemnation proceedings brought by the Bijou Irrigation District in the district court of Weld county, in which plaintiff sought a right of way across defendants' lands for the construction and maintenance of a drainage canal. The board of directors of said irrigation district determined that it was necessary to construct said drainage canal across the lands of complainants in order to protect the dike of a reservoir owned and operated by the irrigation district. Complainants promptly filed a motion requesting the respondent to, "Enter an order herein appointing a Board of Commissioners to determine the necessity of the proposed condemnation." Said motion was denied. An answer was filed and thereafter a second motion requesting appointment of a board of commissioners was filed, which

reads as follows: "Comes now respondent, J. F. Mc-
Intyre, and asks leave to renew his motion filed herein
October 7, 1947, asking for the appointment of a Board
of Commissioners to determine the necessity of the
proposed condemnation, and as ground for this motion,
this respondent again refers to the answer filed herein
originally on the same date, and in addition thereto
shows the Court that the affidavits of Burgis G. Coy
and T. B. Moodey filed herein support the allegations
of the said answer as amended, and show that there is
no necessity for the proposed condemnation, and that
the draining of the lakes between the Bijou Canal and
the McIntyre dike will be of no benefit whatsoever in
the maintenance of the said dike, and that the said
proposed condemnation is not necessary." This motion
also was denied.

By the answer in the condemnation cause, as amended,
it is denied that it is either necessary or useful for the
irrigation district to excavate a drainage canal across
the lands of complainants, or that such drainage canal
is either necessary or useful for the safety of the dike
supporting the reservoir. Upon motion of the irrigation
district the answer of complainants was stricken as
stating no defense to the petition in the condemnation
proceedings. As defendants in the eminent domain
proceedings, complainants went to trial upon the issue
of compensation and damages, over repeated objections
to the respondent's refusal to appoint a board of com-
missioners as requested by complainants.

The respondent Judge of the district court justified
his refusal to appoint a board of commissioners upon
the admitted fact that complainants' demands for such
a board were for the purpose of enabling such commis-
sioners to determine "the necessity or feasibility and
practicability of the intended use and project itself and
the necessity or usefulness of the proposed construc-
tion." It is clear from the record that respondent at all
times stood ready and offered to name a board of com-

missioners to ascertain and determine the necessity for the taking of the lands involved to accomplish the intended purpose of draining the ponds at the toe of the dike. The defendants in the condemnation proceedings (complainants here) did not challenge the necessity for the taking of their lands if the proposed project of the irrigation district was to go forward, but sought to question only the necessity of the whole project, upon the ground that it would not accomplish the purpose intended by the irrigation district.

The respondent, in refusing to name commissioners, stated that if they were appointed, they would be "directed to determine a certain thing, and in this case, I take it, if appointed would be directed to ascertain the necessity of taking this strip to drain the ponds; not whether the ponds need draining, not whether the draining of the ponds will accomplish greater insurance to the dam safety, but merely whether it is a drain ditch that is necessary for the purpose intended, to-wit, draining the ponds." Respondent stated that a commission, if appointed, would not be permitted to consider the question relating to the feasibility of the project itself nor whether said project was necessary to accomplish the purpose of protecting the dike." Since that was the sole question which defendants desired to submit to the commission, respondent said, "There seems to be nothing for commissioners to determine. If that be true, of course it is a useless procedure to designate a commission, and we should not indulge in any useless procedure.

█ The question to be determined is: *Did the respondent, as trial judge, exceed the jurisdiction of the court and abuse his discretion by refusing to appoint a board of commissioners to determine the necessity of taking complainants' lands, when the issue sought to be adjudicated was the necessity or feasibility of the whole project in accomplishing an intended result, rather than the necessity for taking complainants' lands for the*

*purpose intended, namely, the draining of ponds near the toe of the dike?*

The question is answered in the negative. Complainants rely on chapter 61, section 6, '35 C.S.A., the pertinent parts of which are as follows: "The court or judge * * * shall, by an entry in its minutes, appoint a board of commissioners of not less than three freeholders, to ascertain and determine the necessity for taking such lands, franchises or other property * * *."

Sections 387, 388 and 444 of chapter 90, '35 C.S.A. confer upon the board of directors of an irrigation district broad powers relating to the construction, maintenance and operation of irrigation district properties and the acquisition of rights of way over the property of others. It is clear that the board of directors of the Bijou Irrigation District in determining upon the project here questioned did not exceed the powers thus conferred.

In *Gibson v. Cann,* 28 Colo. 499, 66 Pac. 879, a commission was appointed to ascertain the necessity for taking the lands sought to be condemned for a ditch and reservoir. On the issue of necessity, the commission was permitted to consider evidence relating to the practicability and feasibility of obtaining water from sources from which it was intended to supply the ditch and reservoir. It was contended by the objecting landowners that the supply of water available was insufficient to be of any practical value or benefit. Our court, in considering this question, stated: "On oral argument it was suggested by counsel for appellant that in determining the question of necessity the feasibility and practicability of the enterprise inaugurated by appellant were not relevant. This is the material proposition in the case. The constitution and statutes have vested appellant with the authority to exercise the power of eminent domain for the purpose for which he seeks to condemn the land in question. Except as thus restricted his discretion cannot be controlled by the courts. *Warner*

*v. Town of Gunnison,* 2 Colo. App., 430; 2 Lewis' Eminent Domain, (2d ed.) section 393. The question of necessity in condemnation proceedings presents itself in various aspects. What is proper to consider in determining this question will vary according to the circumstances of each particular case. There is certainly nothing in the constitution or the statutes on the subject of eminent domain from which it can be inferred that in investigating the question of necessity the courts can consider whether the petitioner is seeking to launch an enterprise which will be a financial success or not. Courts cannot say that a party shall not carry out an enterprise because it cannot succeed. Such matters must be left entirely to the discretion and judgment of the promoters. It is solely the province of petitioner to determine the feasibility of constructing the proposed ditch and reservoirs."

In *Pine Martin Mining Co. v. Empire Zinc Co.,* 90 Colo. 529, 11 P. (2d) 221, the question of necessity for the taking of property arose. We there stated: "Whether or not an enterprise is feasible or practicable, and whether or not it will be a financial success, cannot be inquired into even by commissioners charged with the duty of determining the question of necessity. *Gibson v. Cann, supra; Haver v. Matonock,* 75 Colo. 301, 225 Pac. 834; *Schneider v. Schneider,* 36 Colo. 518, 86 Pac. 347. And clearly such questions are not for the determination of the court in limine. In *Colorado & Utah Coal Co. v. Walter,* 75 Colo. 489, 226 Pac. 864, we said that a respondent in a proceeding to condemn a right of way for a pipe line cannot contest the feasibility of the enterprise or the petitioner's right to take the water of a spring."

In *Haver v. Matonock,* 75 Colo. 301, 225 Pac. 834, this court considered the scope of the inquiry permitted to a commission appointed to determine the necessity for taking property in condemnation proceedings. In that case the landowners argued that, "Petitioners certainly

have not shown that they had any water, and if without water, the pipe line would be of no use, and consequently not a necessity." In deciding the issue against this contention, we said: "It was not the duty of the commissioners, appointed in this case, to pass upon such questions. Their duty, under the order and the instructions of the court, was solely to determine the necessity of the plaintiffs' proposed ditch and pipe line for the intended use; not whether the plaintiffs had any right to the use intended, nor whether the intended use could ever be consummated. The question of necessity does not involve the right to condemn, nor whether plaintiffs could ever make use of the property sought to be condemned if they obtained it. The question of necessity simply involves the necessity of having the property sought to be taken for the purpose intended."

From the above cited cases it is clear that under the circumstances here present the appointment of a commission would have been a useless procedure, and no error was committed by the respondent in refusing to name commissioners for the purpose of determining a question which they could not lawfully consider.

Accordingly, the rule to show cause is discharged.

MR. CHIEF JUSTICE HILLIARD dissents.