**COLORADO ARLBERG CLUB,**
**Petitioner-Appellant,**

v.

**BOARD OF ASSESSMENT APPEALS of the State of Colorado, Property Tax Administrator of the State of Colorado, and Grand County Board of Equalization, Respondents-Appellees.**

No. 84CA1184.

Colorado Court of Appeals,
Div. I.

March 13, 1986.

As Modified on Denial of Rehearing
March 27, 1986.

Rehearing Denied April 24, 1986.
Certiorari Granted (Board)
July 14, 1986.

Sherman & Howard, Karen M. Zulauf, Raymond J. Turner, Denver, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Denver, for respondents-appellees Board of Assessment Appeals and Property Tax Administrator.

Anthony J. DiCola, Grand Co. Atty., Hot Sulphur Springs, for respondent-appellee Grand County Bd. of Equalization.

PIERCE, Judge.

Petitioner, the Colorado Arlberg Club, appeals the tax assessment placed upon its land as adjusted by the Grand County assessor and the Board of Equalization (the Board), and as affirmed by the Colorado Board of Assessment Appeals and the district court. We reverse and remand with instructions for a reassessment.

In 1982, the Arlberg Club's land was assessed $95,630 for its 125-acre property. In 1983, the Club was assessed $533,770 for the same property. That assessment was based on 29% of an actual value established to be $1,840,585 for the Club's property. The Club, a non-profit corporation, maintains club facilities on approximately 18 of the acres, leases 28 of the acres to the Winter Park Recreation Association, and retains the remainder in its natural, wooded, mountainous condition. The assessment with respect to the leased 28 acres is not disputed.

The Arlberg property is contained within a "final P.U.D. plan" which was approved by resolution in 1980, and is treated as a

special use permit. The P.U.D. (Planned Unit Development) plan designates the 18 acres on which the club facilities are located as a development parcel. The remaining acreage is designated in the P.U.D. plan as open space. The approving resolution also states that the property "shall be taxable for personal and real property tax purposes...."

## I.

The Arlberg Club argues that the Board's assessment as to the two parcels in question is not supported by substantial evidence, and it further argues that in determining actual value the Board failed to consider the restrictive zoning in that it failed to find that the land designated as open space is not developable under the P.U.D. We agree.

■ The taxation statute provides that the "actual value" shall be determined by "appropriate consideration of the cost approach, the market approach, and the income approach to appraisal." Section 39-1–103(5)(a), C.R.S. (1985 Cum.Supp.). It is not disputed that the market approach is appropriate for appraising the land in question and in determining its present market value. *See May Stores Shopping Centers, Inc. v. Shoemaker*, 151 Colo. 100, 376 P.2d 679 (1962). However, respondents argue that the reasonable future use of a property may be also considered in establishing the present market value for tax assessments. We disagree.

Respondents cite to *State Department of Highways v. Ogden*, 638 P.2d 832 (Colo. App.1981), which relies in turn on *Stark v. Poudre School District R1-1*, 192 Colo. 396, 560 P.2d 77 (1977). Both of these cases are condemnation cases concerned with the taking of a property pursuant to the power of eminent domain. In *sui generis* condemnation proceedings equity entitles the owner to have considered the most advantageous future use to which the land may be reasonably applied. *Stark v. Poudre School District R1-1, supra; Wassenich v. Denver*, 67 Colo. 456, 186 P. 533 (1919). However, the tax assessor

does not suffer a taking of property, and therefore, equity does not afford him the same entitlements as it does an owner of condemned property.

■ The valuation placed upon a property in a condemnation proceeding represents the highest and best compensation that an owner would receive upon sale of the property. Such is not the situation with valuation of a property for taxation purposes. The tax assessor can periodically reassess the tax on a property, based on changes in the property's use, on new improvements, or on changes in present market value. Therefore, equity dictates that the principles of the law of eminent domain not be transferred to tax assessment situations. Accordingly, an owner may be taxed based only upon the present use of his property, and the resultant present market value, without consideration of future uses.

■ Here, the Board relied upon testimony which stated that the Arlberg Club property was "two-thirds developable," that the property "could" support a significant number of condominium units, and that the P.U.D. plan "could probably" be amended to allow additional development on the land. These considerations not only reflect improper attention to future uses of the property, but are also highly speculative and are not supported by substantial evidence in the record.

The P.U.D. plan designated for development only the 18 acres on which the clubhouse facilities are located. It further designated a density of 1.7 units per acre for those 18 acres, which amounts to only 31 units that can be built on the land in question. The remaining acreage, according to the final P.U.D. plan, was to be retained as open space. The evidence showed that during the tax year of 1983, the designated open space was used as open space. Thus, the Board improperly relied on appraisals which valued the property on bases of greater development than is possible under the governing P.U.D. plan and on bases of possible amendments to the P.U.D. It

should have relied upon the express terms of the P.U.D. plan as it existed in 1983.

■ Respondents also argue that because the open space within the Arlberg property is not dedicated for public use, it is not restricted. Such an interpretation of open space is not supported by either the commonly understood meaning of the term, nor by the P.U.D. plan. According to the plan, development in the open space included within the Arlberg property is "limited to trails and utility lines."

Respondents' arguments also imply that the Arlberg Club agreed that its open space would be taxed as non-open space. The resolution to which they point, however, establishes only that the Arlberg property shall be "subject to taxation." Thus, the open space must be taxed, but on the basis of its character as open space.

## II.

■ The Arlberg Club next objects to the Board's classification of the 18 acres as commercial, rather than residential, thus applying a 29% tax rate rather than 21%. We find no error in this classification.

The commercial classification includes "hotels and motels" which are defined as "establishments ... primarily engaged in providing lodging, camping, or personal care ... and which are predominantly used on an overnight or weekly basis." Section 39–1–102(5.5), C.R.S. (1985 Cum.Supp.). The testimony demonstrated that the Arlberg clubhouse provided accommodations for sleeping and dining. The evidence also showed that in addition to annual membership dues, there were rental charges for the daily or weekly use of the facilities. Thus, the record substantially supports the Board's application of the commercial tax rate.

## III.

■ Because we are remanding for reassessment based on the record, we address the Arlberg Club's contention of error that the Board improperly refused to accept one of its witnesses as an expert witness. We conclude that the witness should have been accepted as an expert.

Because the Board is governed by the rules of evidence, it has wide discretion in determining whether the requirements of CRE 702 are met. Section 24–4–105(7), C.R.S. (1982 Repl.Vol. 10); CRE 104(a); *Connell v. Sun Exploration & Production Co.*, 655 P.2d 426 (Colo.App.1982). Here, however, the Board abused that discretion.

A witness may properly be qualified as an expert witness by virtue of any one or more of the five factors specified in CRE 702: "special knowledge, skill, experience, training, *or* education." (emphasis added) Here, the witness in question was a part-owner of an appraisal business with seven years of experience which included appraisals in Grand County. Based on these qualifications, the Arlberg Club properly sought to qualify this witness as an expert in the appraisal business.

The witness' qualifications were not refuted except to the extent that he was asked if he was "an M.I.A. appraiser," to which he replied that he was "working toward the designation." Thereupon, one of the Board's members stated: "He is not M.I.A. and so I would say that he is not qualified as an expert witness." Accordingly, the chairman of the Board ruled that: "The witness will not be accepted ... as an expert witness; however, we certainly will accept his testimony."

Although the Board properly allowed the witness to give his opinion as to the value of the Arlberg property, *see Denver v. Hinsey*, 177 Colo. 178, 493 P.2d 348 (1972), it improperly refused to accept him as an expert witness. CRE 702 does not require specific degrees, certificates of training, certain designations, or membership in a professional organization. *See White v. People*, 175 Colo. 119, 486 P.2d 4 (1971). Therefore, here, the witness' lack of an "M.I.A." designation should not have precluded his qualifying as an expert witness. Based on the witness' unrefuted experience as well as apparent skill and special knowledge, the Board erred in not accepting him

as an expert witness with respect to appraisals. *See* CRE 702. Thus, upon remand the Board shall weigh this witness' testimony as if he had been accepted as an expert witness.

The judgment is reversed and the cause is remanded with directions to remand the matter to the Board of Assessment Appeals for it to reassess the Arlberg property based on the existing record and in compliance with the rulings set forth herein.

BERMAN, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

In the first instance, I would hold that it was improper to assess the subject property at the commercial rate rather than the residential rate.

The Colorado Arlberg Club (club) is a nonprofit Colorado corporation dedicated to the furtherance of the sport of skiing. The land and the facilities involved in this dispute are operated solely for the recreational use of its members, and no use by the general public is permitted. The user fees assessed by the club are not to generate profit by the use of this facility but rather to recoup the cost of providing its use to the members.

Implicit in a holding that a facility is a commercial hotel or a motel is the right to use the facilities by any person in the general public. *See* Colorado Public Accommodations Act, § 24–34–601, et seq., C.R.S. (1982 Repl.Vol. 10). I find the statutory definition of hotel, as relied upon by the majority, to be of little consequence for it substantially tracks the *Webster's Third New International Dictionary* definition of hotel. Therein, a hotel is defined as a house licensed to provide lodging and usually meals, entertainment, and various personal services for the public; a building of many rooms, chiefly for overnight accommodation of transients.

Here, utilization of the facilities of the club house is akin to the use of and interest in private residential vacation homes at a resort area. Section 39–1–102(14.4), C.R.S. (1985 Cum.Supp.) refers to residential land as meaning a parcel or contiguous parcels of land under common ownership upon which residential improvements are located and which is used as a unit in conjunction with the residential improvements located thereon. Thus, the touchstone for determining whether property is residential is whether there is common ownership and common use.

Certainly the joint ownership of the facilities by the members of the nonprofit corporation and the use made by them of their facility is less commercial than the time-share condominiums or investment condominiums in resort areas which are taxed as residential rather than commercial property. *See* § 39–1–104(11)(b)(I) and (II), C.R.S. (1985 Cum.Supp.) (exemption for condominium associations). Thus, in determining whether the facilities constitute a commercial or a residential unit, one must compare § 39–1–102(5.5), C.R.S. (1985 Cum.Supp.) with the exceptions contained in § 39–1–104(11)(b)(I) and (II) and consider the actual use made of the facilities. Further, in construing these statutes, we must accord the word "commercial" its common usage. *See* § 2–4–101, C.R.S. (1980 Repl.Vol.1B). Thus, I would read the statutory definition as having implicitly contained therein the requirement that the accommodations be available to the public and further that the accommodations be used by transient guests rather than owners.

However, I would adopt the respondents' contention that, in arriving at actual value pursuant to § 39–1–103, the assessor may properly consider reasonable anticipated future use of the property. I find no logic in requiring a governmental unit, in taking property, to consider the marketability of the property in arriving at actual value but that the government, in assessing value for tax purposes, may not consider such marketability. There is no constitutional, statutory, or rule authority for such different treatment.

Finally, I do agree with the holding of the majority that the Board erred in refusing to accept the club's proffered witness as an expert witness.

I would, therefore, reverse the judgment of the district court and remand the cause to it with directions to set aside the order of the Board of Assessment Appeals and to remand to the Board to conduct another hearing consistent with the views expressed in this dissent.